## Frank H. Warren *vs.* Boston and Maine Railroad & others.

Hampshire.    November 15, 1894. — May 24, 1895.

Present: Field, C. J., Allen, Holmes, Knowlton, & Barker, JJ.

*Personal Injuries — Negligence — Due Care — Assumption of Risk — Contribution between joint Tortfeasors — " Tortious Act."*

In an action of tort against several defendants, where no question of the liability of the defendants among themselves is raised by the pleadings, tried or argued, an order of the court directing a verdict in favor of one of them is not subject to exception by the others.

Where it appears that the plaintiff, a traveller in a buggy on the highway, upon entering the crossing of the way by a railroad at grade, found the gates up, that he looked both ways, and heard no bell or whistle, that the first notice he had of danger was when the gates began to be lowered after he was part way across the tracks, that he got across the tracks and cried out to the gate-keeper to raise the gates, which the latter did not do, and that thereupon the plaintiff turned his buggy into the space between the outer track and the gate and it was there struck by an approaching train, and he was either thrown out or he jumped out, there is some evidence for the jury on the question of the due care of the plaintiff, and of the negligence of the gate-keeper, who was the servant of the railroad company, and a refusal to direct a verdict for the defendant affords no ground of exception.

If the plaintiff, a traveller in a buggy on the highway, through the negligence of the gate-keeper is shut within the gates of a railroad crossing, and while there is either thrown from his buggy by an approaching train or jumps out, he suffers a physical injury, though it consists mainly of a nervous shock, and in estimating the damages the jury may take into consideration the fright and the nervous shock.

In an action against a railroad company by a traveller on the highway, who through the negligence of a gate-keeper was shut within the gates of a railroad crossing and injured by an approaching train, a request by the defendant for a ruling that " if the plaintiff knew or in the exercise of reasonable care might have known that the gates were descending or about to descend before he entered upon the crossing, but notwithstanding took the risk of entering upon the crossing, he cannot recover," was properly refused, since it did not assume that the plaintiff knew that the gates were descending or were about to descend, which in such a case is an essential element to justify the application of the doctrine of the assumption of the risk.

The doctrine of the assumption of the risk, as distinguished from the doctrine of reasonable care, in actions not between master and servant or persons having contractual relations, is confined to cases where the plaintiff knew and appreciated the danger, and voluntarily put himself in the way of it.

In an action for personal injuries the defendant requested a ruling that " there was no evidence that the plaintiff had suffered any loss in his business, or any diminution in the income therefrom, or that he has been compelled to relinquish or abandon the same, and that there can be no recovery therefor." The judge

declined so to rule, and instructed the jury, in substance, that as the plaintiff admitted that the evidence would not justify a finding of a payment by him of one thousand dollars for nursing, or an abandonment of a business from which at the time of the accident he was realizing $2,500 a year, as alleged in the declaration, they should not find those specific sums as damages. There was some evidence that the plaintiff was prevented by his injury from attending to his business in the usual manner, and the jury returned a verdict in his favor. *Held*, that the instructions were correct, and that, as all the evidence of the nature and extent of the plaintiff's injuries was not set out in the exceptions, it could not be said that the ruling requested by the defendant should have been given.

FIELD, C. J.   This is an action of tort for personal injuries, originally brought against the Connecticut River Railroad Company, the New York, New Haven, and Hartford Railroad Company, and the Boston and Maine Railroad.   The plaintiff discontinued as to the Connecticut River Railroad Company; the court, after the evidence was all in, directed a verdict in favor of the New York, New Haven, and Hartford Railroad Company, and submitted the case against the Boston and Maine Railroad to the jury, who returned a verdict for the plaintiff.   Main Street in Northampton runs nearly east and west, and is crossed at grade by the tracks of the Boston and Maine Railroad and the New York, New Haven, and Hartford Railroad Company, which run nearly north and south.   There are two gates, one on the east side of all the tracks, and one on the west side.   The distance between them is eighty-four feet.   The gates are raised and lowered by means of a wheel in the gatehouse by a gateman employed and paid by the Boston and Maine Railroad, one half of whose wages is paid to that company by the New York, New Haven, and Hartford Railroad Company.   The plaintiff, with his wife, was driving in a buggy on the street across these tracks when the gates were lowered by the gateman and the buggy shut in between the gates, where it was hit by a train of the Boston and Maine Railroad, running on one of its tracks.   The exceptions are by the Boston and Maine Railroad.

The first exception is to the ruling of the court directing a verdict in favor of the New York, New Haven, and Hartford Railroad Company.   We do not think that this ruling is open to exception on the part of the Boston and Maine Railroad.   No question of liability of one of these railroad companies to the other was being tried, and no issue of this kind was raised by

the pleadings, or was before the court. The two defendants were not adverse parties. If both companies were liable to the plaintiff, he could have sued both jointly or either separately, and neither could have complained. If there should be a judgment on the verdict in favor of the New York, New Haven, and Hartford Railroad Company, this could not be pleaded as *res adjudicata* in a suit by the Boston and Maine Railroad against that company for contribution, if the Boston and Maine Railroad is compelled to pay the judgment that may be entered on the verdict against it. We of course express no opinion whether a suit for contribution lies between joint tortfeasors in such a case as this. *Buffington* v. *Cook*, 35 Ala. 312. *Harvey* v. *Osborn*, 55 Ind. 535. *McMahan* v. *Geiger*, 73 Mo. 145. *Beveridge* v. *New York Elevated Railroad*, 112 N. Y. 1. Bigelow, Estoppel, (5th ed.) 101. *Wilson* v. *Mower*, 5 Mass. 407. *Dent* v. *King*, 1 Ga. 200.

The next exception is to the refusal of the court to direct a verdict in favor of the Boston and Maine Railroad. There was evidence for the jury that when the plaintiff entered upon the crossing the gates were up; that he looked both ways; that there was no sound of any whistle, and some evidence that no bell was heard; and that the first notice he had of any danger was when the gates began to be let down after he was part way across the tracks; that he got across all the tracks and cried out, "For God's sake raise the gate"; that the gate-keeper did not raise it; that he turned his horse and buggy to the north on the space between the easternmost track and the gate, when the train went by and hit the hind wheel of the buggy next the track; and that he was either thrown out or he jumped out. This was, we think, some evidence for the jury of due care on the part of the plaintiff and of negligence on the part of the gate-keeper, who was the servant of the defendant. *Merrigan* v. *Boston & Albany Railroad*, 154 Mass. 189. *Brow* v. *Boston & Albany Railroad*, 157 Mass. 399.

The next request is as follows: "That for mere risk, peril, mental suffering, and fright, and their consequences, the defendant was not responsible if there was no physical or bodily injury; which the court declined to give, subject to exception." The ruling given was, "that for mere fright or risk the law allows no recovery; but the plaintiff says that here was some-

thing beyond mere fright or risk or peril.  He says that the defendant in effect shut him in within the gates, by its negligence confined him within the gates; and that while he was there the train of the defendant struck his carriage, and he was thrown out upon the ground.  If you should find that there was a tortious act on the part of the defendant, then you may take into account as part of the damage that the plaintiff is entitled to recover, if at all, for fright and mental suffering which he underwent, if he underwent any at all.  It may be used to enhance damages, — fright caused by nervous shock; but if there was nothing more than a mere fright, peril, risk, then the plaintiff would not be entitled to recover damages for that.  Suppose a person should go across a crossing; suppose there was a flagman there and there should be nothing to give any warning; suppose the person should go across, and the train should come, and he should get across safely, — not be hit; he might be subjected to a fright, and there would be no recovery for nervous shock.  But if there was a tortious act, such as is complained of here, then you should take into account the fright, and the nervous shock, and the results that follow."    To this ruling the defendant excepted.

The defendant criticises the phrase " tortious act," as used by the court in this ruling.  We think that the meaning of this phrase in the connection in which it is used is, that if the defendant's train struck the carriage of the plaintiff, and he was thereby thrown out upon the ground, this would be a tortious act if occasioned by the defendant's negligence, and that if this act resulted in injury to the plaintiff, the defendant would be liable if the plaintiff was in the exercise of due care, and that in estimating the damages the jury might take into account not only the physical injury but also the fright and nervous shock.  This ruling, we think, was either correct, or sufficiently favorable to the defendant.  It is a physical injury to the person to be thrown out of a wagon, or to be compelled to jump out, even although the harm done consists mainly of nervous shock.  See *Canning* v. *Williamstown*, 1 Cush. 451; *Victorian Railway Commissioners* v. *Coultas*, 13 App. Cas. 222; *Bell* v. *Great Northern Railway*, 26 L. R. Ir. 428; *Seger* v. *Barkhamstead*, 22 Conn. 290.

The next request and ruling to which the defendant took exception is as follows: " Defendant also requested the court to

rule, that, if the plaintiff knew or in the exercise of reasonable care might have known that the gates were descending or about to descend before he entered upon the crossing, but notwithstanding took the risk of entering upon the crossing, he cannot recover." The court declined to give the ruling, but ruled as follows: "The plaintiff was bound to use reasonable care; in passing upon that question it was proper to take into account his previous knowledge of the crossing, the use of it, his knowledge of the gates and the way in which they worked, and what they signified, — what it meant whether they were raised or lowered. A person approaching a grade crossing must look ; he must use his senses; he must look and he must reason. If there are gates at the crossing it may affect the question as to how far and how much, but he must look to see whether there is a train approaching. It is a matter for you to take into account, in passing upon the degree of care, the gates being there. How were the gates when he approached the crossing? As he drove up to and upon the crossing, how were the gates? Take all the evidence, and examine it carefully, and see what Mr. Warren was doing as he drove on. What did he do? How did he conduct himself? Do you say that it was in a reasonable, prudent way ? If it was, that is sufficient for this part of the case."

Whether, if the plaintiff saw the gates descending when he drove under them and upon the track, he would not be held voluntarily to have taken the risk, is a question upon which we need not express an opinion. But if the gates were "about to descend," it might be important to know how soon they would descend, and what the occasion was of their descending. The request does not assume that the plaintiff knew that the gates were descending or were about to descend, but that he either knew or might by the exercise of reasonable care have known this. The doctrine of the assumption of the risk, as distinguished from the doctrine of reasonable care in an action between persons not master and servant or not having relations by contract with each other, we think, must be confined to cases where the plaintiff knew and appreciated the danger and voluntarily put himself in the way of it. The request of the defendant in the present case is not made on this assumption ; and this exception must be overruled. *Illingsworth* v. *Boston Electric Light Co.* 161 Mass. 583.

The last request and ruling of the court appear in the exceptions as follows: "The Boston and Maine Railroad, after the court had finished the charge to the jury, asked the court to rule that there was no evidence that the plaintiff had suffered any loss in his business or any diminution in the income therefrom, or that he has been compelled to relinquish or abandon the same, and that there can be no recovery therefor, which the court declined to give, subject to exception." In the charge to the jury the court said " that counsel for plaintiff had made claim for certain damages which are not now insisted on; that in the light of the evidence there is no claim made for them now as they are stated here [in the declaration]. For instance, ' by reason thereof the plaintiff was confined to his bed for a long period, and to his house for several months, and subject to an expense of one thousand dollars for nursing.' Now, in the light of the evidence as introduced, the plaintiff does not claim that he has proved that he has paid one thousand dollars for nursing. That specific sum it is not claimed that the evidence shows was paid; so that it would not be proper for you to take that specific sum as such and assess it as damages. Further, with reference to the interference with his business: ' He was compelled to break up and relinquish a valuable business, . . . for which and from which he was then realizing $2,500 a year.' The counsel for the plaintiff does not urge upon you that you should find that specific sum, $2,500 a year. They do not claim that the evidence will justify that, and therefore you will not find that as such. I think I make my meaning clear."

By a stipulation signed by the parties, with the approval of the presiding justice, it appears that the exceptions do not set forth all the evidence upon the extent of the injury to the plaintiff. It must be assumed that there was some evidence that the plaintiff was prevented by his injury from attending to his business in the usual manner. It is agreed " that there was evidence in the case tending to show that the plaintiff had received a severe shock to his nervous system by the accident complained of, and that at the time of the trial he was still suffering from nervous prostration brought about by the said accident." We see no error in the instructions given, and as the exceptions do not set out all the evidence of the nature and extent of the

plaintiff's injuries, we cannot say that the request for a ruling should have been granted.          *Exceptions overruled.*

*W. G. Bassett,* for the Boston and Maine Railroad.

*G. D. Robinson & W. S. Robinson,* for the New York, New Haven, and Hartford Railroad.

*W. S. B. Hopkins & J. B. O'Donnell,* (*F. B. Smith* with them,) for the plaintiff.