THOMAS COLLINS *v.* LAWRENCE GRABLER

[No. 469A60. Filed October 22, 1970. Rehearing denied November 23, 1970. Transfer denied May 27, 1971.]

*Richard C. Ver Wiebe, Lebamoff & Ver Wiebe,* of Fort Wayne, for appellant.

*David B. Keller, Livingston, Dildine, Haynie & Yoder,* of Fort Wayne, for appellee.

LOWDERMILK, C.J.—This is an action brought by plaintiff-appellant against defendant-appellee for personal injuries growing out of a collision between an automobile operated by appellee in which appellant was a guest passenger and another motor vehicle.

Appellant charged, by his second amended complaint, which was amended at the close of the trial, acts of wanton misconduct on appellee's part which proximately caused appellant's injuries.

To appellant's second amended complaint appellee filed answer in two paragraphs, the first being under Supreme Court Rule 1-3, and the second paragraph being in the affirmative and alleging appellant incurred the risk of the accident and injuries. The record discloses that during the trial appellee filed a motion for directed verdict at the conclusion of all the evidence, which was overruled by the court, and after which appellant asked leave to amend his second amended complaint by deleting therefrom the allegation of "willful" misconduct on the part of the appellee. This request

was granted by the court and the allegation of willful misconduct was stricken, and is not now a question before this court.

The trial was had by jury, and a verdict for $10,000 was returned for the appellant and a judgment duly entered in that amount.

Appellee timely filed his motion for new trial on the following grounds: (1) The verdict of the jury is not sustained by sufficient evidence.

The next day appellee's motion for new trial was granted, the court's decree reading as follows:

"It is therefore considered, adjudged, decreed and ordered that it does not appear that substantial justice has been done by the verdict of the jury heretofore rendered in this cause; *that the verdict of the jury in finding for the plaintiff and awarding damages upon such finding was not sustained by sufficient evidence and was against the clear preponderance of the evidence adduced in the trial of this cause; that the preponderance of the evidence adduced upon the trial of this cause was in favor of the defendant and against the plaintiff;* that defendant's motion for a new trial be and the same is hereby sustained and a new trial is ordered in this cause." (Our emphasis.)

Subsequently, appellant filed his motion to make the order sustaining appellee's motion for new trial more specific, which motion was denied by the court.

This court has heretofore ordered and directed the judge of the DeKalb Circuit Court to give his reasons in writing for sustaining appellee's motion for a new trial, and the order has been complied with, and the additional reasons assigned are as follows:

"In response to the order of the Appellate Court of Indiana that 'the Judge of the DeKalb Circuit Court set out the specific reasons on which he determined the verdict of the jury in finding for the Plaintiff and awarding damages upon such finding was not sustained by sufficient evidence and was against the clear preponderance of the evidence adduced in the trial of the cause,' the Judge of

the DeKalb Circuit Court respectfully states that the clear preponderance of the evidence, indeed the uncontroverted evidence, adduced in the trial of said cause shows:

"1. That the Plaintiff, Collins, and the Defendant, Grabler, got together on the night in question for the planned and expressed purpose of having a night on the town and to go from bar to bar to drink and to try and pick up some dates.

"2. That in the course of said evening from about 10:30 P.M. to 2:30 A.M., both the Plaintiff and the Defendant each consumed ten or more drinks of alcoholic beverages, the drinking of which occurred while the Plaintiff and the Defendant were in the presence of each other with each having knowledge of the number and type of drinks of alcoholic beverage consumed by the other.

"3. That the Plaintiff became intoxicated, sick and sleepy due to the drinks he had consumed during the evening; that the Plaintiff knew that the Defendant had consumed as many or more drinks as had the Plaintiff; that both the Plaintiff and the Defendant were intoxicated.

"4. That the Plaintiff accompanied the Defendant on the evening's venture in Defendant's vehicle with the Defendant as the driver thereof to the places where the intoxicating beverages were consumed; that the Plaintiff voluntarily entered Defendant's vehicle with the Defendant as the driver thereof to be returned to his home at the conclusion of the drinking activities of the parties.

"5. That after leaving the last bar where the Plaintiff and Defendant had been drinking, until the bars were closed, and as the Plaintiff and Defendant made their uncertain way home, the Plaintiff had the Defendant stop the vehicle because the Plaintiff had to vomit; that after such act of vomiting, the Plaintiff voluntarily re-entered the vehicle driven by the Defendant for the ride home and the accident occurred shortly thereafter.

"6. That the accident which followed and the injuries to the Plaintiff resulting therefrom were the result of the intoxication of the Defendant, who recalled nothing of the trip after leaving the last bar except for the lights of more trucks than the evidence actually disclosed to have been present, which lights the Defendant thought he saw coming toward him in his lane of traffic just prior to the accident; that the Defendant swerved his car across the highway to avoid these trucks which he thought he saw coming in his lane of traffic and the collision occurred with

vehicular traffic coming toward the Defendant in the opposite lane of traffic without any apparent application of the brakes on Defendant's vehicle prior to the collision.

"7. That the Plaintiff was a guest in the vehicle driven by the Defendant during the entire course of their evening's travels and adventure and the Plaintiff chose to remain the Defendant's guest in Defendant's vehicle on the trip home and further chose to re-enter such vehicle, after the same had been stopped to permit the Plaintiff to vomit, to continue the trip home.

"8. That at the time of the accident, the Defendant was so much under the influence of intoxicants that he was unfit to safely operate his vehicle and the Plaintiff knew or in the exercise of reasonable care should have known of Defendant's intoxicated condition; that in deliberately and voluntarily entering the vehicle which was being driven by the Defendant and in deliberately and voluntarily re-entering such vehicle after the same had been stopped and the Plaintiff had a choice whether or not to continue the trip home with the Defendant, the Plaintiff deliberately and voluntarily assumed the risks incident to such venture; that such deliberate and voluntary assumption of the risk should preclude recovery by the Plaintiff.

"9. That, the jury, having found for the Plaintiff and awarded damages to the Plaintiff, improperly ignored and failed to apply the doctrine of assumption of risk as above stated upon the factual situation as above set forth, and that the Defendant is accordingly entitled to a new trial."

Appellant's assignment of errors is that: (1) The court erred in sustaining appellee's motion for a new trial.

The parties to this litigation were good friends. The appellee returned home from military service and the parties were celebrating appellee's return home. The events that took place before the collision occurred commenced at a restaurant where appellant was employed. The restaurant was located about four miles east of Fort Wayne, between that city and New Haven, and about one-half mile north of Highways 30 and 24. The time was about 9:30 P.M.

They went to Fort Wayne, with the appellee driving his own automobile. The first stop was at a drive-in restaurant,

where appellee had coffee and appellant a coke. After one-half hour there they went to the Bavarian Village, a tavern in downtown Fort Wayne. While there appellee drank scotch and appellant beer, with each having two drinks. They remained there approximately 45 minutes to an hour.

They went from there to the Lucky Shoe, with appellee driving and appellant noticed nothing out of the ordinary about appellee's driving. At the Lucky Shoe, in a period of approximately one-half hour, each of them had three drinks, with appellant drinking beer and appellee drinking scotch.

Shortly after midnight they left the Lucky Shoe and went downtown to the Coney Island Hot Dog Stand, with appellee driving and appellant noticing nothing wrong with such driving. At the Coney Island Hot Dog Stand appellant had two hot dogs and appellee one. They were there fifteen to twenty minutes and walked two doors east to the Citadel, a tavern, arriving at approximately 12:30 A.M. At the Citadel appellant had one beer and appellee one scotch. The parties remained at the Citadel fifteen to twenty minutes and then walked back to the Coney Island. They returned to the appellee's automobile and drove back to the Bavarian Village, with appellee still driving and appellant noticing nothing out of the ordinary about appellee's driving at this time.

Appellant testified that at this time he noticed nothing at all about appellee's physical condition and that appellee was talking all right and was not slurring his words or anything of that sort.

At 1:00 o'clock A.M. or a little later the parties arrived back at the Bavarian Village and ordered more drinks. At this point in the evening appellant began drinking gin, lemon and 7-Up and appellee remained with his scotch. Each had approximately three drinks.

At 2:00 A.M. came the final call for drinks and appellee ordered another scotch. Appellant had nothing further to

drink at that time as he was sick at his stomach and tired and sleepy. Appellant left the Bavarian Village and went out and sat in appellee's car on the passenger's side of the front seat.

Appellee did not want to go home, but wanted to stay in the tavern and finish his drinks and talk with a soldier acquaintance he had made.

Appellant sat in appellee's car and fell asleep. He next remembered the appellee opening the door of the car, which awakened him. He believes it was about 2:30 A.M. The parties had no conversation with one another at this time. Appellant noticed nothing about appellee's condition at this time. The next thing appellant remembers is heading toward New Haven and stopping at the intersection of Anthony and Maumee in Fort Wayne, approximately two miles from the Bavarian Village, where appellant threw up, as he was very sick at his stomach. During this two mile drive appellant was asleep and noticed nothing about how the appellee was driving, but does remember that appellee said something about appellant being a pantywaist, not being able to hold his drinks, and called him a sissy.

Appellant did not ask to get out of the car when the driver stopped to permit him to vomit, did not observe appellee's condition as to whether or not he was intoxicated and did not observe appellee's driving. In fact, the record discloses that appellant did nothing that would be expected of an ordinarily reasonable and prudent man under such circumstances for his own safety. Appellant claims he immediately went to sleep as the trip was resumed and the next he heard was the gravel and dirt flying and he had been injured in the collision.

The parties and the court have used the words "assumed" risk and the words "incurred" risk interchangeably, which is understandable. We are of the opinion that since there was no contractual relationship between the parties shown in this cause that appellant's getting into and riding in appellee's

car at the time and place in question presents the question of "incurred" risk and not a question of "assumed" risk.

We are confronted with the question as to whether the trial judge abused his discretion in sustaining the motion for a new trial as the thirteenth juror. Our statutory jurisdiction of this question is Burns' Ind. Stat. § 2-3201(b), as follows:

"A ruling or order of the court granting a motion for new trial shall be deemed to be a final judgment, and an appeal may be taken therefrom."

In the case of *Bailey* v. *Kain* (1963), 135 Ind. App. 657, 192 N. E. 2d 486 (Transfer denied), from which Judge Smith quoted in the case of *White* v. *Bardach* (1968), 143 Ind. App. 586, 241 N. E. 2d 866, the court said:

"It therefore becomes the sole duty of this court to examine the record to see if (1) the trial court abused its judicial discretion, (2) a flagrant injustice has been done the appellant, or (3) a very strong case for relief from the trial court's ordering a new trial has been made by the appellant. [Citing cases.]

"On consideration of a motion for a new trial, the trial judge has an imperative obligation to weigh the conflicting evidence. [Citing cases.]

"On a motion for a new trial it must clearly appear to the trial judge that substantial justice has been done and, if in his opinion the preponderance of the evidence is against the verdict, it is his duty to grant the new trial. [Citing cases.]

"We will be hesitant to overrule a trial court granting a motion for new trial for the reason that there are strong presumptions in favor of the trial court's action, and it is therefore a sound precedent which dictates that this court should be reluctant to second guess a trial court in granting a motion for new trial. [Citing cases.]"

See, also: *Barner* v. *Bayless* (1893), 134 Ind. 600; *Topper* v. *Dunn* (1961), 132 Ind. App. 306, 177 N. E. 2d 382; *Wildwood*

*Manor* v. *Gary National Bank* (1970), 146 Ind. App. 296, 255 N. E. 2d 128, 20 Ind. Dec. 226.

The trial judge clearly set out his reasons for his sustaining a motion for new trial, which reasons have been heretofore set forth in this opinion. This court required supplemental reasons from the trial judge and they were submitted and have been set forth herein. After a complete review of the evidence, together with a careful study of the trial judge's reasons for ordering a new trial, we are of the opinion that:

1. The trial court did not abuse its judicial discretion in granting the new trial;

2. No injustice has been done to the appellant; and

3. There has not been a strong case for the relief from the trial court's ordering a new trial made by the appellant.

If either one of the reasons given by the court for its action in granting a motion for new trial is sufficient reason therefor, it is not incumbent upon this court to discuss the other reasons. *White* v. *Bardach, supra.*

We will not go behind the motion for new trial and the written reasons stated by the trial judge in granting the motion for a new trial; the only error alleged was that the trial court granted a motion for new trial and this we have fully considered.

The court does now hereby remand this cause to the trial court for a new trial.

Judgment affirmed.

*Cooper, J., concurs;

Carson, J., concurs with opinion;

Sullivan, J., dissents with opinion.

---

* While Judge Cooper participated in a conference of the Judges, and concurred in this opinion, his untimely death occurred before the filing of this opinion.

## CONCURRING OPINION

CARSON, J.—I concur in the result reached by the writing Judge in this appeal but for a different reason.

The record indicates that the jury returned a verdict for the plaintiff-appellant; that the defendant filed a motion for a new trial; that the trial judge sustained the motion for a new trial and after order of this court specified his reasons for sustaining said motion. The reasons in writing filed in the record in this cause contain, among other things, the following language:

> "In response to the order of the Appellate Court of Indiana that 'the Judge of the DeKalb Circuit Court set out the specific reasons on which he determined the verdict of the jury in finding for the Plaintiff and awarding damages upon such finding was not sustained by sufficient evidence and was against the clear preponderance of the evidence adduced in the trial of the cause', the Judge of the DeKalb Circuit Court respectfully states that the clear preponderance of the evidence, indeed the uncontroverted evidence, adduced in the trial of said cause shows:
>
> "1. That the Plaintiff, Collins, and the Defendant, Grabler, got together on the night in question for the planned and expressed purpose of having a night on the town and to go from bar to bar to drink and to try and pick up some dates.
>
> \* \* \*
>
> "3. That the Plaintiff became intoxicated, sick and sleepy due to the drinks he had consumed during the evening; that the Plaintiff knew that the Defendant had consumed as many or more drinks as had the Plaintiff; that both the Plaintiff and the Defendant were intoxicated.
>
> \* \* \*
>
> "5. That after leaving the last bar where the Plaintiff and Defendant had been drinking, until the bars were closed, and as the Plaintiff and Defendant made their uncertain way home, the Plaintiff had the Defendant stop the vehicle because the Plaintiff had to vomit; that after such act of vomiting, the Plaintiff voluntarily re-entered the vehicle driven by the Defendant for the ride home and the accident occurred shortly thereafter.
>
> \* \* \*

"7.  That the Plaintiff was a guest in the vehicle driven by the Defendant during the entire course of their evening's travels and adventure and the Plaintiff chose to remain the Defendant's guest in Defendant's vehicle on the trip home and further chose to re-enter such vehicle, after the same had been stopped to permit the Plaintiff to vomit, to continue the trip home."

The foregoing language convinces me that the trial judge weighed the evidence and arrived at a result different from that of the jury which had also weighed the evidence.

The plaintiff-appellant assigns that the trial court erred in sustaining the appellee's motion for a new trial and devotes his entire argument to the theory that the court granted the motion for a new trial on the grounds "the verdict of the jury is not sustained by sufficient evidence." Applying the theory of the plaintiff-appellant, we are in the position of a referee between the trial court and the jury. I do not believe that such is the proper function of this court in considering the action of the trial court in sustaining a motion for a new trial. As I view it, the function of this court is to determine from the record the basis on which the trial court sustained the motion. This must be determined from the reasons assigned by the trial court. The language of the trial judge in this case, as hereinabove set out, in my opinion leads to the conclusion that the court in effect found the verdict of the jury to be contrary to law. This was one of the assignments in the motion for a new trial.

I do not think that plaintiff-appellant has presented this court with an argument approaching such an interpretation of the trial judge's reasons.

However, giving full credit to the scope of the plaintiff-appellant's argument, I do not believe that he has sustained the burden on appeal of convincing this court that the action of the trial judge in sustaining the motion for a new trial was in violation of the tests laid down in *Bailey* v. *Kain*

(1964), 135 Ind. App. 657, at 662-663, 192 N. E. 2d 486, at 488 (Transfer denied), and followed in *White* v. *Bardach* (1968), 143 Ind. App. 586, 241 N. E. 2d 866, at 869-870, as follows:

> "It therefore becomes the sole duty of this court to examine the record to see if (1) the trial court abused its judicial discretion, (2) a flagrant injustice has been done the appellant, or (3) a very strong case for relief from the trial court's ordering a new trial has been made by the appellant. [Citing authorities.]
>
> \* \* \*
>
> "On consideration of a motion for a new trial, the trial judge has an imperative obligation to weigh the conflicting evidence. [Citing authorities.]
>
> "On a motion for a new trial it must clearly appear to the trial judge that substantial justice has been done and, if in his opinion the preponderance of the evidence is against the verdict, it is his duty to grant the new trial. [Citing authorities.]
>
> "We will be hesitant to overrule a trial court in granting a motion for new trial for the reason that there are strong presumptions in favor of the trial court's action, and it is therefore a sound precedent which dictates that this court should be reluctant to second guess a trial court in granting a motion for new trial. [Citing authorities.]"

The failure, therefore, of plaintiff-appellant to demonstrate to my satisfaction that the trial court violated those duties enjoined upon it by the decisions of the Supreme Court of Indiana and by this court necessitates an affirmance of the decision of the trial court.

The decision should be affirmed.

## DISSENTING OPINION

SULLIVAN, J.—I respectfully dissent from the result and from the reasoning stated in the opinion by Judge Lowdermilk. I believe that it was error for the trial court to sustain defendant's motion for new trial.

## ASSUMPTION OF RISK, AN AFFIRMATIVE DEFENSE, IS NOT PROPERLY ARGUABLE UNDER DEFENDANT'S SUFFICIENCY OF EVIDENCE SPECIFICATION

It is apparent from examination of the opinion written by Judge Lowdermilk which I shall hereafter refer to as the primary opinion,[1] the record, and the briefs filed herein that the parties, the trial court, and my learned colleagues, Judges Lowdermilk and Cooper, consistently but erroneously confine the consideration of this appeal to the defendant-appellee's specification in his motion for new trial which alleges that the verdict of the jury for plaintiff was not sustained by sufficient evidence.

The sole substantive issue embraced within the majority's discussions is that of the defense of "assumption" of or "incurred" risk as set forth in the trial court's statements of reasons. Such issue is an affirmative defense upon which defendant below had the burden of proof. *Ridgway* v. *Yenny* (1944), 223 Ind. 16, 57 N. E. 2d 581. In a verdict for plaintiff, as below, the error, if any, presented by defendant's contention that said plaintiff assumed the risk is not preserved by a specification that the verdict is not sustained by sufficient evidence, for as to the defendant the verdict with respect to that affirmative defense is negative. The error, therefore, if any, concerning "assumption" of risk is reached solely by a specification that the verdict is contrary to law. *Souerdike* v. *State* (1952), 231 Ind. 204, 108 N. E. 2d 136.

Defendant's motion for new trial did, in fact, contain a specification that the verdict was contrary to law. The trial court, however, in its consideration of the motion did not view the defense of "assumption" of risk within that framework; nor did it, as required in the context of a verdict contrary to law, find that plaintiff *as a matter of law* "assumed"

---

1. Since the views set forth in the opinion by Judge Lowdermilk, in which Judge Cooper concurred, do not reflect the views of a majority of the members of the Division it would be inappropriate, I believe, to refer to such as a majority opinion.

the risk. The trial court mistakenly considered the matter and reached its determination upon the premise that the evidence preponderated in favor of a finding that plaintiff "assumed" the risk.[2]

The appellate review of the trial court's action as set forth in the primary opinion likewise treats the matter as one dealing with a sufficiency of the evidence. The established law of this jurisdiction, however, does not restrict this court upon review to a consideration solely of the reasons stated by the trial court in granting the defendant's motion for new trial. *Rans* v. *The Pennsylvania R.R. Co.* (1962), 133 Ind. App. 592, 181 N. E. 2d 644. The majority, therefore, would be within its prerogative in sustaining the granting of a motion for new trial if, in fact, the motion is well-taken, even though not for the reasons set forth by the trial court. In this connection certain language used in the primary opinion indicates to this writer that had the trial court and had this court utilized the proper standard of review to determine the issue, the same result would have been reached.

## 'THIRTEENTH JUROR' PRINCIPLE, AS FOUNDATION FOR MAJORITY'S RESULT HEREIN, IS INAPPROPRIATE

I am somewhat at a loss to place in proper perspective the treatment of the issue in this cause, as contained in the primary opinion. The opinion by Judge Lowdermilk considers at great length the evidence adduced below. The conclusion reached by the primary and concurring opinions, however, is confined to the view that this court is virtually powerless to overturn the act of a trial judge in granting a

---

2. The trial court's ruling upon defendant's motion for new trial sets forth the following reasoning:

"* * * that the verdict of the jury in finding for the Plaintiff and awarding damages upon such finding was not sustained by sufficient evidence and was against the clear preponderance of the evidence adduced upon the trial of this cause; that the preponderance of the evidence adduced upon the trial of this cause was in favor of the Defendant and against the Plaintiff * * *"

new trial. My three colleagues rely upon *White* v. *Bardach* (1968), 143 Ind. App. 586, 241 N. E. 2d 866, and *Bailey* v. *Kain* (1963), 135 Ind. App. 657, 192 N. E. 2d 486, in this regard. I agree that the above-cited cases lend support to the application of the abstract proposition that a trial judge is a thirteenth juror and must weigh conflicting evidence in determining whether to grant or deny a motion for new trial. To be sure, in some extreme cases a trial court might effect justice in arbitrarily substituting his view for that of the jury. Further, it is perhaps felt that no one is truly harmed by a second trial for if, in fact, the jury was correct in the first instance, the chances are that a second jury will find similarly.

I disagree with the logic or propriety of such legal principle, however, and take this opportunity to set forth the basis of my disagreement. In all other areas of trial practice and procedure our decisions constantly harp against invasion of the jury's province. It is well-established that the jury is the *sole* trier of fact and it is for the jury alone to weigh the evidence and determine the credibility of the witnesses. See *Relick* v. *Penn-Harris-Madison School Corporation* (1970), 254 Ind. 281, 258 N. E. 2d 845 and *Trustees of Indiana University* v. *Williams* (1969), 252 Ind. 624, 251 N. E. 2d 439. This principle to my knowledge has never been, nor should it be, qualified by a condition—"unless the trial judge disagrees". In my view the trial judge, no matter how learned, experienced and wise, is not and should not be a thirteenth juror. The trial judge, whether before or after verdict, should interfere with the fact finding process if, and only if, in his considered opinion, reasonable minds must reach, as a matter of law, a particular verdict.

My view in this regard is given persuasive support by the most recent action taken by the Indiana Supreme Court in this area. Trial Rule 59 (E) of the new Indiana Rules of Civil Procedure requires that when a new trial is granted the trial judge must make special findings in support of the ruling

and that if the ruling is to the effect that the verdict was against the weight of the evidence, the finding must relate the supporting and opposing evidence to each issue upon which a new trial was granted.

At least one perspicacious observer immediately noted that such rule indicates a conscious desire on the part of our Supreme Court to safeguard the fact finding process and insulate it from well-intentioned trial courts. *Greenebaum, Post Trial Motions Under the New Indiana Rules,* 45 Ind. L.J. 377 at 381-382. That this more restrictive requirement concerning the granting of new trials was deliberate on the part of the Supreme Court is further indicated by the fact that the General Assembly deleted the provision from the Study Commission's proposed draft [Acts 1969, ch. 191, § 1, Rule 59 (E)], but that said provision was reinstated by the Supreme Court in the promulgation of the rules. It is my belief, therefore, that the rule or principle enunciated in the primary and concurring opinions herein and by the court in the *Bardach* case and in *Bailey* v. *Kain, supra,* is alien to the traditional and well-founded truth-seeking jury process; is persuasively disapproved by Trial Rule 59 (E); and accordingly should be here and now accorded the appropriate last rites.

## DEFENSES AVAILABLE IN AUTOMOBILE GUEST CASES AS INCLUSIVE OF INCURRED RISK, ASSUMED RISK, CONTRIBUTORY WILFUL OR WANTON MISCONDUCT, AND CONTRIBUTORY NEGLIGENCE

It is my view that the legal doctrines of assumption of risk, incurred risk, contributory wilful or wanton misconduct, together with contributory negligence which *arguably* constitutes a defense to a claim by an automobile guest passenger, are the keystone of the cause before us. The law in this area is far from settled, but the primary and concurring opinions do nothing to alleviate this unsettled state of affairs.

A reading of the cases leads one to conclude, at least by inference, that the following defenses arguably may be available to a defendant in an automobile guest case:

1. Contributory wilful or wanton misconduct;
2. "Assumption" of risk whether or not restricted to situations in which a contractual relationship exists between plaintiff and defendant;
3. "Incurred" risk, whether used synonymously with "assumed" risk or as descriptive of relationships between plaintiff and defendant which are not contractual; and
4. Contributory negligence although the availability of such defense in a guest case is contrary to the widely and often stated view that simple contributory negligence does not bar a recovery against a wilful or wanton automobile host—defendant.

The primary issue which should have been decided by this court is whether, as a matter of law, a guest-passenger assumes or incurs the risk of his injury; or whether he is guilty of wilful or wanton misconduct himself which contributes to his own injury.

At the outset it is appropriate to delineate the distinction in the classic or technical sense between "assumed" and "incurred" risk.

The doctrines of assumption of risk and incurred risk are together a "jack of all defenses" which roams so far a range as to defy capture, but the courts never seem to tire in their efforts to corral it. The concept of assumption of risk was developed, and was deemed applicable, only with reference to the action of a servant against his master. On the other hand the doctrine of "incurred" risk in Indiana was first discussed at length in the case of *Indiana Natural Gas and Oil Company* v. *O'Brien* (1903), 160 Ind. 266, 65 N. E. 918, 66 N. E. 742. There the court in explaining and defining the doctrine stated:

" * * * the doctrine of 'incurred risk' or 'taking the risk' or 'running the risk' may be said to rest upon, or be, in its nature, effect, and import, the equivalent, at least, of the principle expressed by the maxim *volenti non fit injuria*,

and is not founded on the theory of an applied agreement or contract as is usually asserted in suits by a servant against the master. This doctrine or principle, as asserted, is of universal application, and is not confined alone to cases where the relation of the parties is of a contractual nature. Therefore, independently of such relations, there may be in a case like the one at bar an element to the effect that the injured party by his acts in the premises is shown to have incurred or taken upon himself the risk incident to a known and appreciated danger, and, if the facts disclose such a feature or element in the case, it should be recognized and treated accordingly, and not merely as one constituting contributory negligence. *Warren* v. *Boston, etc., R. Co.*, 163 Mass 484, 40 N. E. 895; *O'Maley* v. *South Boston Gas Light Co.*, 158 Mass. 135, 32 N. E. 1119, 47 L.R.A. 161; *Thomas* v. *Quartermaine*, L.R. 18 Q.B.D. 685; *Miner* v. *Connecticut River R. Co.*, 153 Mass. 398, 26 N. E. 994; Thompson, Negligence (2d ed.), § 184.

"In order, however, that the principle to which we have referred may operate or be applicable to cases of the class of the one under review, it must appear that the injured person had knowledge of the danger in question, and appreciated it, and voluntarily, or of his own choice, exposed himself to or encountered such danger, thereby incurring, or taking upon himself, the risk incident thereto. See authorities above cited. Where a person has knowledge of and fully appreciates a danger, and under such circumstances, without any special exigency compelling him, he exposes himself to such danger or peril, his act in the premises may be deemed to have been voluntary. Contributory negligence in such a case can not properly be said to be an element therein, for certainly the voluntary act of a party in exposing himself to a known and appreciated danger is wholly incompatible with an act of negligence or carelessness, for it must be manifest that carelessness in regard to a matter is not the same as the exercise of a deliberate choice in respect thereto. Freedom of the will, in fact, is the thing emphasized by the principle asserted in the maxim *volenti non fit injuria*. It certainly must be true that, in an act where design is shown, the imprudence or negligence of the actor is wholly immaterial as a feature therein. * * *

"It is evident that contributory negligence and incurring the risk of a known and appreciated danger are two independent and separate defenses which should not be confused with each other. * * * " (160 Ind. 266 at 272-274)

The *O'Brien* case remains the leading authority on the doctrine of incurred risk in Indiana, being cited recently by this court in *Coleman* v. *DeMoss* (1969), 144 Ind. App. 408, 246 N. E. 2d 483.

Unfortunately, however, what were rather clear judicial doctrines in 1903 have become clouded and confused over the years. Thus, while the doctrine of "assumption" of risk was used primarily in the early cases when the employer-employee relationship was involved, with the advent of automobile guest statutes and the requirement that the host-driver must be guilty of something more than ordinary negligence in order to be liable for injuries to his guest-passenger, the doctrine has taken on new significance and has been subject to great misinterpretation. This misinterpretation arises because contributory negligence has been traditionally, and in my view still is, unavailable as a defense in such cases. The problem that has arisen and caused untold confusion in many of the "guest cases" is the failure of the courts to consistently distinguish the separate natures of the doctrines of contributory negligence, assumption of risk and incurred risk. Too often the three doctrines have been allowed to overlap, and thus have become confounded.

In *Coleman* v. *DeMoss, supra,* we stated that:

> "The Indiana cases are not explicitly clear in distinguishing and comparing the doctrines of 'assumption of risk' and 'incurred risk'. However, it appears that for one to either 'assume' or 'incur' a risk, it is required that there be some knowledge and understanding of the risk involved and that the one who 'incurs' or 'assumes' the risk, does so voluntarily. The doctrines are distinguished on the basis that 'assumption of risk' only arises in the context of a contractual relationship, while 'incurred risk' requires no contractual undertaking. * * *"

And in *Stallings* v. *Dick* (1965), 139 Ind. App. 118, 128, 210 N. E. 2d 82, we noted:

> "The courts have differentiated between the doctrine of *assumed* risk and the doctrine of *incurred* risk only to the

extent of holding that the doctrine of *assumed* risk applies only in those instances where there is a contractual relationship between the parties. * * * "

(It should be noted that the *Coleman* and *Stallings* cases, *supra,* do not deal with automobile guest situations nor with wilful or wanton misconduct.)

Notwithstanding accurate technical statements in the *Coleman* and *Stallings* cases concerning the law as it exists with reference to the distinction between assumed risk and incurred risk, it is, I believe, appropriate for us to reassess that distinction. In guest cases when dealing with the plaintiff's incurring or assumption of a risk, I would not alter the requirement that such be voluntary and knowing. I see no reason, however, to continue the distinction between assumed and incurred risk merely on the basis that a risk may be "assumed" only where there is a contractual relationship. As Dean Prosser has said:

> " * * * Although it was said in early decisions, and is still repeated by some courts, that assumption of risk will not be found apart from a contract relation between the parties, it is now generally recognized that the basis of the defense is not contract but consent, and that it is available in many cases where no agreement exists. * * * "
> Prosser on Torts (3rd Ed. 1964), § 67, p. 459.

To abolish the distinction, however, in guest cases appears to place us between Scylla and Charybdis, as can be noted from a reading of this court's recent opinion in *Rouch* v. *Bisig* (1970), 147 Ind. App. 142, 258 N. E. 2d 883, wherein Judge Sharp notes that "incurred risk" is a species of contributory negligence.[3] He appropriately cites *Cleveland RR.*

---

3. The contrary school of thought, however, is exemplified by the following persuasive language from *Williams* v. *Brown Manufacturing Co.* (Ill. 1970), 261 N. E. 2d 305, 312, which, though not an automobile guest case nevertheless places the "assumed risk" defense in proper perspective.

"* * * Furthermore, while the test to be applied in determining whether a user has assumed the risk of using a product known to be dangerously defective is fundamentally a subjective test, in the sense that it is *his* knowledge understanding and appreciation of the danger

v. *Lynn* (1911), 177 Ind. 311, 95 N. E. 577, and *Emhardt* v. *Perry Stadium, Inc.* (1943), 113 Ind. App. 197, 46 N. E. 2d 704. I would interpret the *Rouch* opinion to necessarily exclude "incurred" risk, (i.e., in a noncontractual relationship), as a defense to the action by a guest plaintiff against a wilful or wanton defendant. This conclusion is dictated if incurred risk is a species of contributory negligence for the reason that contributory negligence is not a defense available to a wilful or wanton defendant.

On the other hand, in *Indiana Natural Gas & Oil Co.* v. *O'Brien, supra,* at page 272, our Supreme Court in a negligence case considered the doctrine of "incurred risk, taking the risk or running the risk" and properly held that the doctrine requires that the risk be appreciated and that the person voluntarily and of his own choice expose himself to it and further that in this connection the imprudence or negligence of the actor is wholly immaterial, in that the wilfulness implicit in incurring the risk is incompatible or inconsistent with simple negligence. To the same effect is *Pierce* v. *Clemens* (1943), 113 Ind. App. 65, 46 N. E. 2d 836, and *Pittsburgh Rwy.* v. *Hoffman* (1914), 57 Ind. App. 431, 107 N. E. 315. Depending upon which line of authority in Indiana is selected we might, and often do, erroneously vary the availability of defenses in guest cases.

## APPLICATION OF NEGLIGENCE CONCEPTS IN GUEST CASES

In addition to the uncertainty heretofore and presently extant concerning *which* defenses are available in guest cases, there is a related uncertainty relative to the standards or tests by which the particular defense being considered is to be applied in guest cases.

It is, or should be well-established that a defendant-host under the Indiana guest statute, Acts 1929, ch. 201, § 1, as

which must be assessed, rather than that of the reasonably prudent person. * * *"

amended and as found in Ind. Ann. Stat. § 47-1021 (Burns' 1965 Repl.), is not liable to his guest for simple negligence, i.e., his conduct is not measured by the standard of reasonable care nor by what a reasonable man would or would not do; nor is the guest barred from recovery merely because he may have been contributorily negligent as opposed to contributorily wilful or wanton. These statements are so often made as to constitute virtual truisms in the law broaching no rational contradiction. The case law of Indiana, however, does not readily justify such confidence in the impregnability of these principles. To the contrary, it would seem, some decisions lend rational support to a contention that parties in guest cases sometimes must have their conduct tested by the standard of reasonable care.

A great deal of the confusion has come about by reason of judicial attempts in automobile guest cases to utilize principles earlier enunciated in simple negligence cases. This has been particularly true when the defense of assumed or incurred risk is claimed. Many automobile guest decisions rely upon statements drawn from simple negligence cases. It is, therefore, understandable how language dealing in concepts of negligence, e.g., the "reasonable man" standard, occasionally has crept into guest cases despite the fact that in the latter situations we are concerned solely with wanton or wilful misconduct on the part of a defendant and/or with contributory wanton or wilful misconduct on the part of a plaintiff. The trial court and the primary opinion in this case have also inadvertantly, I believe, placed incurred or assumed risk within an inapplicable framework of negligence concepts.

In the statement of reasons given by the trial judge for sustaining the motion for new trial it is said that:

" *. * * * the plaintiff knew or in the exercise of reasonable care should have known of defendant's intoxicated condition * * * "

and in the primary opinion Judge Lowdermilk observes that "appellant did nothing that would be expected of an ordinarily

reasonable and prudent man under such circumstances for his own safety." These pronouncements run contrary to the proper guidelines for evaluation of guest cases as stated in *Brueckner* v. *Jones* (1970), 146 Ind. App. 314, 255 N. E. 2d 535, 543:

> "Since 1937 the Indiana Supreme and Appellate Courts have laid down certain guidelines for the lower courts to follow in evaluating guest cases. An examination of these authorities indicates:
>
> a. An error of judgment or a mistake standing alone, on the part of the host, will not amount to wanton or wilful misconduct.
>
> b. The host must have manifested an attitude adverse to the guest, or of 'perverseness', in that the host must have shown he was indifferent to the consequences of his conduct.
>
> c. The entire course of conduct of the host leading up to the accident must be considered.
>
> d. The host must have had actual knowledge of danger confronting the guest."

See also *Clouse* v. *Peden* (1962), 243 Ind. 390, 186 N. E. 2d 1. The four requirements set forth in *Brueckner* obviously concern the conduct of a host-driver and not the guest. The requirements, however, are just as valid and are readily adaptable to a consideration of the guest's conduct, i.e., he must have shown reckless disregard for his own life or safety; he must have been indifferent to the consequences of the driver's conduct to himself; he must have had actual knowledge of danger confronting him; and his entire course of conduct leading up to the injury must be considered. This test or standard should not be construed as identical with the test used in determining assumed or incurred risk. The actual knowledge of danger in contributory wanton or wilful misconduct means knowledge that *under all the circumstances* injury is likely or probable. See *Mazza* v. *Kelly* (1970), 147 Ind. App. 33, 258 N. E. 2d 171. The guest must be con-

sciously doing what he wants to do with full knowledge of existing conditions which would likely or probably lead to his injury. In incurred or assumed risk, however, actual knowledge means knowledge and realization of the particular risk involved and an actual appreciation of that risk.

I do not criticize my colleagues for allowing the concepts and language of simple negligence to infiltrate their consideration of the duties and responsibilities required by the Indiana guest statute, for as stated by Chief Justice Burger in *Walz* v. *Tax Commission of the City of New York,* Cause No. 135, — U. S. —, (Decided May 4, 1970) :

> "The considerable internal inconsistency in the opinions of the Court derives from what, in retrospect, may have been too sweeping utterances or aspects of these [defenses] that seemed clear in relation to the particular cases but have limited meaning as general principles."

It is advisable, if not necessary, at this juncture in time, however, that we clarify, not further confuse the traditional theories of liability and defense under the Indiana guest statute. Either the scope of the statute is for policy reasons restricted to conduct which is wilful or wanton, or the statute is as a practical matter but a branch of simple negligence law. We cannot continue to interchange the concepts and hope to retain requisite stability in the law.

In the final analysis, perhaps it is for our General Assembly to reassess the public policy considerations, or perhaps it is for our Supreme Court to unsnarl the law concerning defenses in guest cases. If negligence concepts have any proper place in automobile guest situations, our highest court should delineate narrowly the specific instances of such application.

It is my view, however, that we must gauge a guest-plaintiff's or host-defendant's conduct solely by the wilful or wanton standards.

## THE EVIDENCE ADDUCED BELOW DOES NOT INDICATE THAT PLAINTIFF ASSUMED OR INCURRED THE RISK AS A MATTER OF LAW OR THAT AS A MATTER OF LAW HE WAS CONTRIBUTORILY WILFUL OR WANTON

My separate opinion here has set forth important, I think, but nevertheless peripheral, matters. My prior discussion primarily takes issues with the method by which the result was obtained in the primary opinion. More basic and to the point is an analysis of the evidence taken below. Such evidence does not, in my view, support a conclusion that as a matter of law plaintiff assumed or incurred the risk of his injury or that he was contributorily wilful or wanton in his actions.

The factual circumstances surrounding the cause of action brought below do not, I think, bring plaintiff's conduct within the ambit of the assumption of risk or incurred risk doctrine. Those defenses necessarily involve the "voluntary" assumption or incurring of a "known" risk. To be sure, one who "voluntarily" becomes intoxicated to the extent that he is mentally unable to knowingly and voluntarily assume a risk or even to be aware of the risk should not be permitted to benefit by his conduct. An intoxicated person should not be in any better position to recover from a wilful or wanton automobile host than a sober person. Nevertheless, the drunk's conduct cannot be forced into the assumption of risk or incurred risk pigeon hole. The elements of voluntariness or awareness are strikingly absent. We cannot tailor legal doctrine to suit a result oriented decision. We must achieve justice through the law, not in spite of it.

Even assuming *arguendo* that the case before us was a proper one for decision upon the assumed or incurred risk theory, a "guest" case which, when viewed against the evidence in this case, seems determinative on the question is *Thompson* v. *Pickle* (1963), 136 Ind. App. 139, 191 N. E. 2d

53. In the *Thompson* case, Judge Hunter speaking for the court used the phrase "assumption of risk" as a synonym for "incurred risk" in its technical sense and held:

" * * * The doctrine of assumption of risk involves a voluntary choice of the individual between a course of action known to be dangerous and one that is not dangerous * * * Therefore we are inclined to believe that the question of voluntary assumption of risk was a fact question for the jury to determine from all of the evidence and the law on the issue as given in the court's instructions. The jury having found for the appellees upon the evidence we cannot say as a matter of law such evidence renders imperative an opposite result."

Judge Hunter also cited *Ridgway* v. *Yenny & Lombardo* (1944), 223 Ind. 16, 57 N. E. 2d 581, and interpreting the Ridgway holding said:

" * * * The court said that the failure of the plaintiff to get out of the car at this time did not *necessarily* constitute a *voluntary* assumption of risk, as the plaintiff was in an unfamiliar area and it would be quite possible that she would encounter even a greater danger by getting out of the car. This was a question on which reasonable men may differ, therefore it was properly left for the jury." (Emphasis supplied)

Upon the facts here before us, i.e., the lateness of the hour, the fact that plaintiff-appellee Collins was in downtown Fort Wayne quite a distance from home, and in view of his condition, the choice left to Collins, even were he able to make it, was similar to the choice presented to the plaintiff in the *Ridgway* case and therefore may not have been truly voluntary.

The conduct of the intoxicated person in such circumstance, however, might very well constitute contributory wilful or wanton misconduct so as to bar his recovery. The case before us, I believe should have been treated and decided, not on the basis of assumed or incurred risk, but rather on the basis of contributory wilful or wanton misconduct on the part of

plaintiff. I am of the view, however, that the evidence in this cause was not such as to justify a determination of contributory wanton or wilful misconduct *as a matter of law*. It must be noted that in the opinion of Dr. Schlademan, a pathologist who testified concerning the effect of alcohol upon the human body, appellee Grabler's blood-alcohol content of .24 *"might* be indicated by changes in speech or perhaps vision—general instability and fairly high state of intoxication." Thus, Collins *might not* have been able to detect that his companion was intoxicated, or at least a jury might reasonably so find.

The Doctor also stated that experienced drinkers can often mask their intoxication. "In other words some people show it; some people don't." The Doctor further testified on redirect examination that if he drank ten beers it *"might* affect his ability to perceive intoxication in another." (Emphasis supplied)

In addition, I am unable to agree as concluded by the majority that the amount of liquor consumed by the defendant-appellee was *necessarily* known to the appellant, nor as also concluded in the majority opinion that defendant was *necessarily* under the influence of intoxicating beverages which condition must have been known. The earlier testimony of Dr. Schlademan was not conclusive in these respects. The Doctor testified in terms of what "might be."

In a very recent Illinois decision, *Sloma* v. *Pfluger* (1970), 261 N. E. 2d 323, 329, a very similar legal and factual issue was determined and correctly so as follows:

> "In this case, the question of whether the plaintiff—in accepting the ride with Carpenter after the drinking bout and in falling asleep immediately upon getting into the pickup truck—was guilty of wilful and wanton conduct, was clearly a question of fact for the jury's determination. (citations omitted).

> " * * * As the above-cited cases indicate, when one person who has accompanied another drinking, then rides with him and even falls asleep leaving the driver alone with his task, it will normally be within the province of the jury

under the particular facts of each case, to determine whether the guest was guilty of wilful and wanton conduct in so doing. The jury's determination in this regard was not contrary to the manifest weight of the evidence."

While the evidence here may be such as to support a jury finding *either* way, i.e., that plaintiff may or may not have been contributorily wilful or wanton, such circumstance does not justify the granting of a motion for new trial. To the contrary, such state of the facts requires us to reverse and reinstate the jury's verdict below. Since reasonable minds could differ upon an assessment of the evidence below, I believe the jury's verdict must stand.

I would reverse and remand this cause to the trial court with instructions to reinstate the verdict of the jury and to enter judgment thereon.

NOTE.—Reported in 263 N. E. 2d 201.