EMMA DAVIS *v.* CHARLES W. LEE, JR., CHARLES W. LEE, SR.

[No. 1-872A48. Filed February 8, 1973. Rehearing denied March 7, 1973. Transfer denied July 17, 1973.]

*Ronald Warrum, Claude Bates, Bates, Ewers and Noffsinger,* of Evansville, *George Ankenbrand,* of Princeton, for appellants.

*Jack N. Van Stone, Rice & Van Stone,* of Evansville, *Robert Fair, Fair & Rehnquist,* of Princeton, for appellees.

ROBERTSON, P.J.—The plaintiff-appellant (Mrs. Davis) is appealing the granting of a new trial to the defendants appellees (Lee, Sr. and Lee, Jr.). Mrs. Davis had received a $40,000 verdict in a wrongful death action after a trial by jury.

Mrs. Davis' complaint was in two paragraphs, the first of which alleged that the decedent was an employee of the Lees, and the second of which alleged that he was an invitee. Both paragraphs charged the Lees with negligence: in failing to provide a safe place in which decedent could work; in placing an unlicensed firearm in a place where it was available to mischievous persons; and in failing to render medical aid

to the decedent. The second paragraph of the complaint also alleged that the Lees negligently failed to protect the decedent from the acts of irresponsible, unsavory, and dangerous persons.

The facts of this case reveal that on March 22, 1968, and for some time prior thereto, Rankin Davis, the decedent, was employed as a dealer and stick man in an illegal gambling establishment located on the second floor above a tavern known as the "Spot," in Evansville, Indiana. Both the tavern and the gambling establishment were owned and operated by Charles W. Lee, Jr., who was the employer of Rankin Davis. The extent of Charles Lee, Sr.'s ownership, if any, of the establishment is not established by the evidence.

At approximately ten o'clock on the evening of March 22, 1968, Davis was found on the floor of a doorway between the lounge and the office of the gambling establishment with a bullet wound in the right side of his head. Davis was taken by a fire emergency squad to a hospital where he was pronounced dead upon arrival. Lee, Jr. had been downstairs during this time and did not come upstairs until after Davis' body was discovered. Lee, Sr. was in Florida at this time. The revolver which inflicted the fatal wound was owned by Lee, Jr. who did not have a license for it. Lee, Jr. last saw the weapon that evening when it was in the pocket of his coat which was hanging on a coat rack in the upstairs office. The evidence was not conclusive as to whether Davis was engaged in his duties as an employee at the time in question.

The police investigation included a paraffin test on the hands of both Lee, Jr. and the decedent. The test revealed no nitrate on Lee Jr., hands, and nitrate on the right hand of the decedent. An autopsy by a pathologist showed powder burns on Davis, but the undertaker testified that he did not see any powder burns. There was some evidence that Davis had been despondent and nervous shortly prior to his death. Davis was sixty-four years old at the time of his death. The police

concluded after their investigation that Davis had committed suicide, but the county coroner did not think that suicide was probable. The evidence indicated that Davis, who was left-handed, had been shot in the right side of the head. There was also evidence that Davis had become proficient in the use of both hands while engaged in his employment as a dealer or stick man.

A witness testified that had never seen any violence or anyone carrying weapons in the establishment. No testimony was offered as to any fights, carrying of weapons, or violence of any nature (other than one witness who testified that he had been asked to leave when he was too loud) in the establishment.

In her case in chief, Mrs. Davis called twenty-four witnesses, six of whom were hostile and often refused to answer questions relying on their Fifth Amendment privilege against self-incrimination. The Lees, on the other hand, called one witness, Charles Lee, Sr. who testified among other things that his son Charles Lee, Jr. was currently in a federal penitentiary, serving time on an interstate gambling charge. The Lees also introduced into evidence the decision of the Full Industrial Board of Indiana, rendered on July 11, 1969, which found that:

> "Plaintiff's decedent's (Rankin Davis) death did not arise out of and in the course of his employment with the Defendant (Charles Lee Jr.) herein; and Plaintiff's decedent's death was due to causes wholly unrelated to his employment with the said Defendant."

The Lees separately and jointly filed motions for a directed verdict at the close of all the evidence. This was granted in part and overruled in part. They then filed a motion to correct errors which the court granted. The pertinent parts of the ruling read:

> "The Court further finds that the verdict of the jury is clearly erroneous as contrary to or not supported by the evidence, and now specifies the following general reasons therefor;

1. There is no substantial evidence that the Defendant, Charles W. Lee, Sr. had an opportunity to protect Rankin Davis from any act or acts of irresponsible, unsavory or dangerous person or persons on the premises.

2. There is no substantial evidence that the Defendant, Charles W. Lee, Jr. had an opportunity to protect Rankin Davis from any act or acts of irresponsible, unsavory or dangerous person or persons on the premises.

3. There is no substantial evidence that the Defendant, Charles W. Lee, Sr. had knowledge of any act or acts of irresponsible, unsavory or dangerous person or persons.

4. There is no substantial evidence that the Defendant, Charles W. Lee, Jr., had knowledge of any act or acts of irresponsible, unsavory or dangerous person or persons.

5. There is no substantial evidence that firearms available to irresponsible, unsavory or dangerous characters was the proximate cause of decedent's death.

6. There is no substantial evidence that the decedent died as a result of an act or acts of irresponsible, unsavory or dangerous persons.

7. There is no substantial evidence that the Defendant, Charles W. Lee, Sr., had any knowledge of any firearms on the premises available to irresponsible, unsavory or dangerous persons.

8. There is no substantial evidence that the Defendant, Charles W. Lee, Jr. had any knowledge of any firearms on the premises available to irresponsible, unsavory or dangerous persons.

9. There is no substantial evidence that anyone was present in the room with the decedent, Rankin Davis, at the time he was shot.

10. There is no substantial evidence that the Defendant, Charles W. Lee, Sr., negligently kept a firearm on the premises available to irresponsible, unsavory or dangerous persons.

11. There is no substantial evidence that the Defendant, Charles W. Lee, Jr., negligently kept a firearm on the premises available to irresponsible, unsavory or dangerous persons.

12. There is no substantial evidence that irresponsible, unsavory or dangerous characters on the premises was the proximate cause of decedent's death.

13. There is no substantial evidence that the failure

to maintain order and discipline was the proximate cause of decedent's death.

14. The substantial evidence was that the decedent was a regular employee of the establishment and therefore assumed any risk incurred in working there.

15. The evidence was that the decedent was not an invitee of either of the defendants.

16. There was no substantial evidence that the Defendant, Charles W. Lee, Sr., carelessly and negligently placed an unlicensed firearm on the premises of the establishment in such a place where it was easily available to persons bent on mischief and that such firearm was used by such person in the shooting and killing of the decedent.

17. There was no substantial evidence that the Defendant, Charles W. Lee, Jr., carelessly and negligently placed an unlicensed firearm on the premises of the establishment in such a place where it was easily available to persons bent on mischief and that such firearm was used by such person in the shooting and killing of the decedent.

IT IS, THEREFORE, ORDERED AND ADJUDGED BY THE COURT that a new trial be granted to the plaintiff."

Mrs. Davis then filed her motion to correct errors, which specified:

"1. The Court erred in sustaining the 'Motion to Correct Errors' filed by the defendant.

2. The Court clearly abused its discretion when it sustained the defendant's 'Motion to Correct Errors'.

3. The Court's decision to sustain the defendant's 'Motion to Correct Errors' was contrary to law.

4. The Court committed an error of law subsequent to the trial in sustaining the defendant's 'Motion to Correct Errors', which error has not been corrected.

5. The Court, at the time it sustained the defendant's 'Motion to Correct Errors' failed to comply with the mandatory requirements of Trial Rule 59 (E) (7), and has not yet complied with said rule."

The trial court ruled thusly:

"The Court having further considered the plaintiff's Motion to Correct Errors now finds that rhetorical paragraph five (5) thereof should be sustained and the remainder thereof overruled. The Court, therefore, pursuant to plain-

tiff's motion and pursuant to Trial Rule 59(E), subparagraph (7), now states that having had an opportunity to examine the record in this cause, including all of the evidence, *judgment should have been entered by the Court on the evidence.*" (emphasis added)

The substance of the trial court's ruling on Mrs. Davis' motion to correct errors is that the trial court failed to direct a verdict on the evidence.

Just as Mrs. Davis has grouped her argument on the first four assignments of error, we shall also discuss them jointly.

"In determining whether the trial court properly granted a new trial this court on appeal will confine its consideration to the reason stated by the trial court. ■ (citing authorities). It is also clear that the decision of the trial court in granting a motion for new trial will be affirmed if any of the reasons stated by the trial judge for granting the same are proper. (citing authorities)." *Landers* v. *McComb Window and Door Co.* (1969), 145 Ind. App. 38, 248 N.E.2d 358, 362.

"It therefore becomes the sole duty of this court to examine the record to see if (1) the trial court abused its judicial discretion (2) a flagrant injustice has been done the appellant, or (3) a very strong case for relief from the trial court's ordering a new trial has been made by the appellant." *Bailey* v. *Kain* (1963), 135 Ind. App. 657, 192 N.E.2d 486, 488.

Utilizing the law as well as the philosophy of *Bailey* v. *Kain, supra,* we are of the opinion that the trial judge, acting as the "thirteenth juror," committed no error in his granting a new trial. No purpose would be served by our attempt to to paraphrase or expand upon *Bailey, supra,* which held:

"On consideration of a motion for a new trial, ■ the trial judge has an imperative obligation to weigh the conflicting evidence. (citing authorities). On a motion for a new trial it must clearly appear to the trial judge that substantial justice has been done and, if in his opinion the preponderance of the evidence is against the verdict, it is his duty to grant the new trial. (citing authorities).

We will be hesitant to overrule a trial court in granting a motion for new trial for the reason that there are strong presumptions in favor of the trial court's action, and it is therefore a sound precedent which dictates that this court should be reluctant to second guess a trial court in granting a motion for new trial. (citing authorities)." 192 N.E.2d 488.

\* \* \*

"\* \* \* The duty thus imposed as stated hereinbefore requires that the judge attentively review, consider and weigh the evidence presented during the trial. Such a mandate places upon him (the trial judge) the duty of observing and noting all of the indicia of truth and falsehood surrounding the witnesses at the trial together with all of the surrounding circumstances about which they testified and thereupon to determine the credibility of the various witnesses and the weight to be accorded their testimony. All of such factors must conscientiously occupy the judge's attention on a motion for a new trial and he should exercise them with 'careful deliberation' \* \* \* in his determination of the question of the preponderance of the evidence, and if in the judge's opinion, the evidence preponderated against the verdict of the jury it is his imperative duty to grant a new trial for the party seeking such relief. This is a duty the trial judge should face conscientiously and unflinchingly, 'with firmness for the right' and without fear or favor. (citing authorities)." 192 N.E.2d 489. See also: *Nowling* v. *Akers* (1971), 149 Ind. App. 645, 274 N.E.2d 546.

The instant case is aptly described by Judge White when he said:

"The briefs of the parties have demonstrated that reasonable men could have found from the evidence as did the jury and that equally reasonable men could have found as did the trial court. We find no abuse of discretion." *Bredemeyer* v. *Cooper* (1971), 150 Ind. App. 511, 276 N.E.2d 615, 616.

Mrs. Davis' final contention is the rulings of the trial court are not in compliance with that part of TR. 59(E)(7), IC 1971, 34-5-1-1 which calls for special findings of fact upon each material issue or element of the claim upon which the new trial was granted. We are of the opinion that the dual rulings

of the trial court on the motions to correct errors provide a minimum record upon which the appeal could be made.

Adopting the holding of *Bredemeyer, supra,* we are of the opinion that to require further detailed findings by the trial court would serve no useful purpose at this point in time. We would add our voice, however, to those who have expressed the dangers of not complying with the spirit and the letter of this rule.

Judgment affirmed.

Lowdermilk and Lybrook, JJ., concur.