NISSEN TRAMPOLINE COMPANY *v.* TERRE HAUTE FIRST NATIONAL BANK, AS GUARDIAN OF THE ESTATE OF BRUNO GARZOLINI, JR., A MINOR AND HERBERT A. MASON D/B/A SOUTHLAKE BEACH

[No. 1076S334. Filed October 12, 1976. Rehearing denied February 7, 1977.]

*Geoffrey Segar, Ralph A. Cohen,* of Indianapolis, for appellant.

*Robert Springer, William Maher,* of Terre Haute, for appellees.

DEBRULER, J.—Plaintiff, Bruno Garzolini, Jr., brought suit against the Nissen Trampoline Company[1] (hereinafter Nis-

---

1. Although the parties agreed before trial that the correct name was Nissen Corporation, the captions on their appellate briefs refer to the Nissen Trampoline Company.

sen) and Herbert A. Mason d/b/a Southlake Beach to recover damages to him from an injury on an aqua diver manufactured by Nissen and set up for use at Mason's beach. He sued Nissen on the theories of liability for a defective product unreasonably dangerous to the user and liability for misrepresentation of a material fact. He sued Mason on a theory of negligence.

After a jury trial, the jury returned a verdict for both defendants. Plaintiff filed a motion to correct errors, which the trial court granted. The trial judge found that the verdict of the jury in favor of defendant Nissen was against the weight of the evidence, and granted a new trial, pursuant to Ind. R. Tr. P. 59(E)(7). He overruled the motion to corrrect errors as to plaintiff's claim of negligence. Nissen filed a motion to correct errors from the court's grant of a new trial and also a motion for a change of judge. The trial judge granted Nissen's motion for a change of judge for the new trial. Afterwards, he overruled Nissen's motion to correct errors. Nissen appeals from the trial judge's grant of the motion for a new trial and from his overruling Nissen's motion to correct errors. The Court of Appeals, First District, affirmed the trial judge's grant of a new trial. 332 N.E.2d 820 (1975). Nissen appeals to this Court by a petition to transfer, which we grant.

The facts of the case are undisputed. In June, 1970, Bruno Garzolini, Jr., who was thirteen years old and who had never used a trampoline or an aqua diver before, got in line behind his brother and cousin to use the aqua diver at Mason's Southlake Beach. He knew he was to climb the ladder, stand at the top on the platform, jump down onto the canvas mat avoiding the cables which connected the mat to the metal frame, and go off into the water. He looked down at the mat, waited a second to be sure he was clear, then jumped or slipped or fell off the platform. His left leg went through the cables and his body fell on forward, breaking his leg over the frame of the aqua diver. Due to complications, it was necessary to amputate his leg above the knee.

We address ourselves to the task of reviewing the trial judge's grant of a new trial because the verdict was against the weight of the evidence, enjoined by the common law of the State "to examine the record to see if:

(a) The trial court abused its judicial discretion;

(b) A flagrant injustice has been done the appellant; or

(c) A very strong case for relief from the trial court's ordering a new trial has been made by the appellant."

*Memorial Hospital of South Bend, Inc.* v. *Scott,* (1973) 261 Ind. 27, 300 N.E.2d 50, 54.

And, in dealing with the issue, we afford the trial court's decision a strong presumption of validity and are hesitant to overturn it. *Bailey* v. *Kain,* (1963) 135 Ind. App. 657, 192 N.E.2d 486. However, with the adoption of Trial Rule 59(E), an order granting a new trial on this basis is required to be supported by special findings and a collation of evidence. With the advent of this new requirement, appellate courts have been called upon to consider a new issue, namely, whether the trial court has complied with the rule. When non-compliance with the rule has been established, differing responses by courts on appeal may be noted. Some courts have considered the evidence in the record or, as stated in the briefs, have made a rough judgment as to whether the trial court was correct. *Davis* v. *Lee,* (1973) 155 Ind. App. 207, 292 N.E.2d 263; *Bredemeyer* v. *Cooper,* (1971) 150 Ind. App. 511, 276 N.E.2d 615. In *Collins* v. *Grabler,* (1970) 147 Ind. App. 584, 263 N.E.2d 201, the appellate court remanded the case to permit the trial judge to supplement his findings. In *Lake Mortgage Co.* v. *Federal National Mortgage Assn.,* (1975) 262 Ind. 601, 321 N.E.2d 556, under such circumstances, this Court reversed and ordered reinstatement of the judgment. No single relief has been deemed appropriate in such cases.

In the case before us, after both parties had presented their evidence, the court instructed the jury on two legal

theories relevant to this appeal. One of plaintiff's instructions required that he prove by a preponderance of the evidence that "said trampoline was in a defective condition unreasonably dangerous to users of the trampoline without warning Herbert Mason of the defective condition or the danger caused by such defect." Defendant Nissen's instruction was that plaintiff was required to prove by a preponderance that "the aqua diver in question was in a defective condition unreasonably dangerous for use by persons of the same age, experience, knowledge and judgment as was possessed by plaintiff at the time of his accident." Defendant Nissen's instructions also included one which defined "defect" or "defective" as a condition which "is not contemplated by and will be unreasonably dangerous to the user." "Unreasonably dangerous" was defined as "a condition which is more dangerous than would be contemplated by the ordinary user having the ordinary knowledge of others in the community as to the characteristics and uses of the product. In this case, 'others in the community' refers to other persons of like age, judgment, experience and knowledge as was possessed by plaintiff at the time of his injury."

Under these instructions, the jury could have found for the plaintiff if it determined that the aqua diver was defective and unreasonably dangerous to the user due to a defect in design or due to the lack of warnings to Mason. The jury, however, returned a verdict in favor of defendant Nissen.

Pursuant to Trial Rule 59 (E) (7), the trial judge made special findings and granted a new trial. He concluded that the aqua diver was "a defective product dangerous to the user without warning and instruction." His findings included: "The evidence is undisputed that no warnings or instructions for use accompanied the aqua diver when delivered . . ." and "The greater weight of the evidence, by expert testimony . . . is that supervision and instruction should accompany the use of such equipment by beginners." Based on these findings and his conclusion that "the aqua diver is a defective product dangerous to the user without warning and instruction," the

trial judge granted a new trial.[2] It is undisputed that neither Mason nor plaintiff received any cautionary information.

When the trial judge grants a new trial because the verdict does not accord with the evidence, Trial Rule 59(E)(7) requires him to make "special findings of fact upon each material issue or element of the claim or defense upon which a new trial is granted. . . . [I]f the decision is found to be against the weight of the evidence, the finding shall relate the supporting and opposing evidence to each issue upon which a new trial is granted."

---

2. The special findings of fact and court order on plaintiff's motion to correct errors, omitting the formal parts, is as follows:

"1. The evidence is undisputed that defendant, Nissen Corporation, was on the 6th day of June, 1959, and for several years thereafter, the manufacturer and seller of an aquatic diving device called an 'Aqua Diver.'

2. The evidence is undisputed that on said date Herbert A. Mason purchased an aqua diver from Nissen Corporation.

3. The evidence is undisputed that no warnings or instructions for use accompanied the aqua diver when delivered later that summer.

4. The evidence is undisputed that the aqua diver purchased by Mason was used each summer at his recreation establishment known as Southlake Beach until June 28, 1970, without significant injury to any user.

5. The evidence is undisputed that the aqua diver was in the same condition on June 28, 1970, as it was when purchased from Nissen.

6. The evidence is undisputed that on June 28, 1970, as the plaintiff, Bruno Garzolini, Jr., used the aqua diver for the first time, his left leg became entangled in the elastic cables, was broken at the knee and later had to be amputated above the knee.

7. The evidence is undisputed that prior to selling the aqua diver, the defendant, Nissen Corporation, had determined by tests that it was possible for a user's foot to slip between the elastic cables of the aqua diver.

8. The greater weight of the evidence, by expert testimony of persons knowledgeable in rebounding equipment, is that supervision and instruction should acompany the use of such equipment by beginners.

From the foregoing findings of fact the Court concludes that the aqua diver, manufactured and sold by the defendant, Nissen Corporation, is a defective product dangerous to the user without warning and instruction; that on the 28th day of June, 1970, the aqua diver sold by Nissen to Herbert A. Mason was used by the plaintiff, Bruno Garzolini, Jr., while in substantially the same condition in which it was sold and as a result the plaintiff is entitled to recover for the injuries sustained by use of the product.

It is therefore ordered that the plaintiff's Motion to Correct Errors be sustained as to plaintiff's claim under the theory of strict liability, the jury's verdict being against the weight of the evidence and a new trial is ordered herein.

It is further ordered that the Motion to Correct Errors is overruled as to plaintiff's claim of negligence directed to each defendant."

In this case, as noted, the trial judge concluded that "the aqua diver is a defective product dangerous to the user without warning and instruction." To support his conclusion, he was required to set out the evidence on both sides relating to the elements which plaintiff had to prove under the theory that his injury was proximately caused by a product defective and unreasonably dangerous without warnings. Two principal elements of plaintiff's claim as it was defined by the trial judge were: (1) the aqua diver was defective and unreasonably dangerous to users without warnings; and (2) the unreasonably dangerous absence of warnings was the proximate cause of plaintiff's injury.

In its motion to correct errors, Nissen brought to the attention of the trial court that the requirements of Trial Rule 59 (E) had not been fulfilled with regard to these two principal elements:

"3. The Court's Entry of April 17, 1971, violates Trial Rule 59 (E) in that it fails to set forth the supporting and opposing evidence with respect to the issue of whether supervision and instruction should accompany the use of an aqua diver or of rebounding equipment by beginners and with respect to the issue of strict liability and proximate cause."

In its memorandum to that motion, appellant argued that the court's findings were insufficient with respect to the issues of whether the aqua diver was defective and unreasonably dangerous without warnings, and with respect to the absence of such warnings being the proximate cause of plaintiff's accident and injury. After having been afforded this opportunity to reconsider the findings and order in light of the requirements of Trial Rule 59 (E), and after having again re-weighed the evidence, the trial judge was unable to supplement the findings so as to set forth any warning or the content of any instruction, the absence of which rendered the aqua diver defective and unreasonably dangerous. Neither was he able, upon reconsideration of the findings and the requirements of the Rule, to set forth the supporting and

opposing evidence relevant to a determination of what a proper warning should state, or what instruction a beginner should receive. Such findings and collation of evidence on point, are indispensable to a rational conclusion that the product was defective and unreasonably dangerous to the user without warnings, *and* to a rational conclusion that such unreasonably dangerous condition was the proximate cause of the accident and injury.

As a result of the absence of findings and recitation of evidence on these issues, the parties, and indeed the Court of Appeals, were required to hypothesize specific warnings which the trial court found lacking. Appellant understood the trial court to base its conclusions upon a determination that the product was unreasonabby dangerous without a warning that it should not be used without supervision and instruction. The Court of Appeals, on the other hand, believed that the trial judge determined that the product was unreasonably dangerous without "a warning concerning the danger of a user's foot slipping between the elastic cables of the Aqua Diver." 332 N.E.2d at 826. We, ourselves, on this Court, have hypothesized possible warnings and possible suitable instructions in light of the evidence presented. This type of speculation has no part in a rational judicial process, as it leads this Court to weigh evidence. And, it makes hopeless the appellant's task of presenting a focused argument in its briefs.

In reversing in this case, we identify the substantive and procedural requirements for the lawful grant of a new trial Rule 59 (E) (7) as paramount. The purpose of authorizing the trial judge to grant a new trial, when the judge considers the verdict to be against the weight of the evidence, is to erase the occasional unsupportable jury verdict. It is to supplant that which is irrational with something that is rational. An order of court can fulfill this extraordinary and extreme function only if it is based upon a complete analysis of the relevant facts and applicable law, and sets out on paper the constituent parts of that analysis. It is compliance with the arduous and time-consum-

ing requirements of the Rule which provides assurance to the parties and the courts that the judge's evaluation of the evidence is better than the evaluation of the jury.

On cross-error, the plaintiff argues that a party which takes a change of judge after a new trial is granted, pursuant to Ind. R. Tr. P. 76(5), may not thereafter file a motion to correct errors attacking the trial court's order granting a new trial and appealing that order.

On April 17, 1974, the trial court ordered a new trial. On April 25th, the defendant Nissen filed a motion for a change of judge, which was granted on the same day. On April 30th, Nissen filed its motion to correct errors. On May 2nd, the trial judge who had granted the change of judge overruled Nissen's motion to correct errors.

We find this procedure precisely correct. Trial Rule 76(5) provides that a party may have a change of judge, and "[W]hen a new trial is granted, whether the result of an appeal or not, the parties thereto shall have ten days from the date the order granting the new trial is entered on the record of the trial court." Trial Rule 59(C) provides that "[a] motion to correct errors shall be filed not later than sixty days after the entry of judgment." Clearly, unless defendant Nissen was to waive his right to a change of judge, he had to act immediately.

Plaintiff argues that defendant accepted the benefit of the order granting a new trial by obtaining a change of judge and therefore waived his right to file a motion to correct errors or to appeal on the ground that the grant of a new trial was error. He also argues that it would be contrary to all judicial precedent to allow a change of judge, so that the new judge could rule on the motion to correct errors.

Speaking first to plaintiff's last contention, we agree, of course, that the Rules do not contemplate the review of either party's motion to correct errors by the judge selected for the new trial. The judge who presided at the trial must rule on any motion to correct errors. In this case, he did so, so that this contention has no substance.

We cannot agree that a motion for a change of judge for the new trial indicates an acquiescence in the order granting a new trial or a recognition of its validity. In argument, plaintiff contended that the Rules provide that a party either may move for a change of judge or may appeal the order granting a new trial, but may not do both. By moving for a change of judge for the new trial, he admits the grant of a new trial was valid.

We find no basis for this argument in the Rules or in equity. Trial Rule 76(5) does not state or imply that the party filing such a motion waives any rights to contest the order for a new trial. There is nothing inconsistent in appealing from an order of the trial judge granting a new trial and ultimately, on retrial, having trial before another judge. A motion for a change of judge in the new trial and a motion to correct errors attacking the trial judge's grant of the new trial are not mutually exclusive. A party does not waive one by moving for the other.

The order of the trial court granting a new trial is reversed.

Givan, C.J., and Prentice, JJ., concur; Arterburn, J., dissents with opinion; Hunter, J., dissents with opinion.

### DISSENTING OPINION

ARTERBURN, J.—I dissent from the majority opinion.

This is a case in which Bruno Garzolini, age 13 at the time, was injured when he jumped from an aqua diver trampoline manufactured by the Nissen Trampoline Company. The trampoline was set up on a recreation beach. He climbed the ladder, stood at the top and attempted to jump on the mat, avoiding certain cables which connected the mat to the metal frame. In jumping he slipped and fell off the mat, his leg went through the cables and his body fell forward breaking his leg on the frame, which necessitated amputation of the leg above the knee.

The jury returned a verdict for both the defendants, the trampoline company and the owner of the breach. The trial

court granted a new trial as to the defendant trampoline company but not as to the owner of the beach.

In substance the majority opinion claims that the trial judge cannot properly grant a new trial because it did not state facts sufficient to show liability as required under the rules. With this conclusion I do not agree. The trial court found specifically, among others, that the left leg of the child Bruno became entangled in the elastic cables when he landed on the trampoline and that his leg was broken at the knee necessitating an amputation. The court further found:

"The evidence is undisputed that prior to selling the aqua diver, the defendant, Nissen Corporation, had determined by tests that it was possible for a user's foot to slip between the elastic cables of the aqua diver.

The greater weight of the evidence, by expert testimony of persons knowledgeable in rebounding equipment, is that supervision and instruction should accompany the use of such equipment by beginners.

From the foregoing findings of fact the Court concludes that the aqua diver, manufactured and sold by the defendant, Nissen Corporation, is a defective product dangerous to the user without warning and instruction; that on the 28th day of June, 1970, the aqua diver sold by Nissen to Herbert A. Mason was used by the plaintiff, Bruno Garzolini, Jr., while in substantially the same condition in which it was sold and as a result the plaintiff is entitled to recover for the injuries sustained by use of the product.

It is therefore ordered that the plaintiff's Motion to Correct Errors be sustained as to plaintiff's claim under the theory of strict liability, the jury's verdict being against the weight of the evidence and a new trial is ordered herein."

The finding of the trial court as set forth above shows that the verdict of the jury was contrary to the evidence and the law.

The law is well settled in this state that a user of equipment who is injured by hidden or latent defects is entitled to recover from the manufacturer who designs and sells such equipment. *J. I. Case Co.* v. *Sandefur*, (1964) 245 Ind. 213, 197 N.E.2d 519. We made plain therein that for recovery

the defect must be hidden and not observable. If the defect was open and observable there was no liability upon the company because the user and the purchaser should have been aware of such conditions. There should be no prohibition against a manufacturer manufacturing any product if its condition is known to the purchaser by observation or information or by direct contract for such a product.

However, in this case we have a different factor entering into the question of liability. A child, age 13, does not have the mature judgment and the awareness of danger that an older person has. An older person might see a danger in the way a product is constructed and avoid the danger where a child would not recognize or see such condition. Therefore, a manufacturer may manufacture a product for which he would not be liable to mature individuals using same because the dangers are observable, while it would be liable where a like product was intended and sold to be used by immature persons or children. In my opinion that is the case here. This trampoline with the dangerous cables holding a mat of some eighteen inches in diameter was known to be dangerous from the finding of facts herein. It shows that a leg or foot might become entangled therein. As the majority states, these were all observable undoubtedly to a mature individual. Indeed, this situation in my opinion might be classified as an attractive nuisance where liability attaches for resulting injury for a child but not for a mature individual. I point out a like analogy when the law fixes different standards in negligence and contributory negligence when a child is involved rather than an adult. I therefore feel in this field of products liability it is logical that the standards of care for observable defects should be different in the case of children and that of mature adults.

I would affirm the judgment of the trial court.

### DISSENTING OPINION

HUNTER, J.—I dissent from the majority opinion for the following reasons.

In choosing to reverse this case on procedural grounds, the majority relies upon what they find to be a lacuna in the trial judge's recitation of facts in support of his order with regard to the issue of proximate cause. Presumably the case is reversed rather than remanded because the majority believes no such finding to be possible. I believe that a finding of proximate cause is implicit in the judge's order and that that finding is supported by the facts recited by him, as is the finding of a defective product.

The defect in this product as found by the trial court in its order granting a new trial is the appellant's failure to warn of a known danger involved in the use of its aqua-diver and the failure to provide instructions and adequate supervision. There is a growing feeling among orthopaedic surgeons that use of trampolines without proper and expert supervision encompasses a great danger of serious injury to the user. The gravity of foreseeable harm should be a factor in the calculus for determining strict liability. It is apparent from defendant's Exhibit 7 that the slightest misgauging by the user of his jump could result in serious injury to him. A distance of nearly two feet was to be negotiated in the jump from the platform to a mat of but sixteen inches diameter, followed by a fall of a similar distance to the water, this distance varying with the water level.

The very nature of this defect prevents the plaintiff from adducing proof in the traditional sense of causation in fact. None can say with absolute certainty in these circumstances, that with the provision of adequate warnings and instructions, the plaintiff would or would not have been injured. Liability should not be denied where the scarcity of proof is due to the manufacturer's actions. Neither can I say as a matter of law that a manufacturer of an obviously dangerous product should be free to assume that the peril of use is not its responsibility. Obvious dangers are not necessarily appreciated ones, and a strong allure combined with an atmosphere conducive to peer pressure could easily sublimate a rational fear.

An examination of the record does not lead to the conclusion that the trial judge abused his discretion in granting a new trial, that a flagrant injustice has been done, or that appellant has presented a strong case for relief.

Defendant's Exhibit 7

NOTE.—Reported at 358 N.E.2d 974.