Curtis CROWSTON, Plaintiff and Appellant,

v.

The GOODYEAR TIRE & RUBBER COMPANY and Kelsey–Hayes Company, Defendants and Appellees.

Civ. No. 930236.

Supreme Court of North Dakota.

Sept. 9, 1994.

Galen J. Vaa, of Gjevre, McLarnan, Hannaher, Vaa, Skatvold & McLarnan, Moorhead, MN, for plaintiff and appellant.

Duane H. Ilvedson, of Nilles, Hansen & Davies, Ltd., Fargo, for defendant and appellee Goodyear Tire.

M. Daniel Vogel, of Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for defendant and appellee Kelsey–Hayes Co.

VANDE WALLE, Chief Justice.

Curtis Crowston appealed from a final judgment, entered upon a summary judgment on his post-sale duty to warn claim and a jury verdict on his other claims, dismissing his products liability action against Kelsey–Hayes Company and The Goodyear Tire & Rubber Company. We hold that, under negligence principles, when manufacturers learn about dangers associated with the use of their product after it is manufactured and sold, they have a post-sale duty to take reasonable steps to warn foreseeable users about those dangers. We therefore reverse the summary judgment dismissal of Crowston's post-sale duty to warn claim and remand for further proceedings on it. We

affirm the dismissal of Crowston's other products liability claims.

## I

On June 4, 1986, Crowston, a 20 year old employee on the night shift at a Fargo service station, was seriously injured while inflating a 16 inch light truck tire on a mismatched 16.5 inch wheel. Crowston had worked at the service station for only a few weeks and had limited experience repairing tires and operating a tire changing machine. According to Crowston's employer, night shift employees were not authorized to do any repair work. According to Crowston, a customer asked him to repair the tubes in four light truck tire/wheel assemblies, and he repaired two of the tires without incident.

The third tire/wheel assembly was a mismatched 16.5 inch wheel manufactured by Kelsey–Hayes in 1973 and 16 inch tube-type tire manufactured by Goodyear in 1977. According to Crowston, he locked the assembly into a tire changing machine, and removed the tube without taking the tire off the wheel. After repairing the tube and reinserting it into the tire, he inserted the tire bead over the flange of the rim and lubricated the bead area while the assembly remained locked into the tire changing machine. However, as he had with the first two tires, he then removed the assembly from the tire changing machine and began inflating the tire on the floor. According to Crowston, he had inflated the tire to 28 pounds per square inch (psi) when he was interrupted by a customer. Crowston testified that, after helping that customer, he resumed inflating the tire when it exploded, seriously injuring him.

Crowston sued Goodyear and Kelsey–Hayes, alleging negligence and strict liability in tort in the design, manufacture, and sale of their component parts of the tire/wheel assembly.[1] Crowston alleged that, when the component parts of the tire/wheel assembly were sold, they were defective and unreasonably dangerous and failed to include adequate warnings. He also alleged that after the manufacture and sale of the component parts of the assembly, both defendants received knowledge that mismatching 16 inch tires and 16.5 inch wheels created a dangerous condition which could result in explosions during inflation of the tire and that both defendants negligently failed to give adequate post-sale warnings about those mismatching dangers.

Each defendant answered separately, denying that its respective part of the tire/wheel assembly was defective or unreasonably dangerous and alleging that Crowston's injuries were caused by his negligence, assumption of risk, or other contributory fault. The defendants claimed that the explosion was caused by Crowston's failure to follow proper tire repair procedures, including over-inflating the tire to more than 90 psi, and by his failure to follow a warning and instructions for use on a safety label on the tire changing machine.

The defendants moved for partial summary judgment on Crowston's claim that the defendants negligently failed to give appropriate post-sale warnings about the dangers associated with mismatching 16 inch tires and 16.5 inch wheels. They asserted that they had no post-sale duty to warn about the dangers associated with mismatching. The district court granted the defendants' motion for summary judgment on that claim.

A jury thereafter returned a special verdict for the defendants on Crowston's other claims. In Crowston's strict liability claim, the jury found that Goodyear's 16 inch tire was not defective and unreasonably dangerous because of the design of the bead, or the absence of a warning on the sidewall; that Kelsey–Hayes' 16.5 inch wheel was not defective and unreasonably dangerous because of the possibility of mismatching 16 inch tires with that wheel, the absence of a warning on the wheel not to mount 16 inch tires on it, or the location and legibility of size markings; and that Crowston's misuse and assumption of risk were the proximate cause of his injuries. In Crowston's negligence claim, the

1. Crowston also alleged a breach of warranty claim against the defendants. However, prior to trial, that claim was voluntarily dismissed.

jury found that Goodyear was not negligent in designing the tire bead, or in failing to provide adequate warnings on the tire; that Kelsey–Hayes was not negligent in designing a 16.5 inch wheel on which a 16 inch tire could be mismatched, or in failing to provide adequate warnings on the wheel; and that his injuries were proximately caused by the negligence of him and his employer. Judgment was entered dismissing Crowston's action, and he appealed.

Crowston raises several issues which fall into three categories: dismissal of his post-sale duty to warn claim, admission of evidence, and jury instructions.

## II

### POST–SALE DUTY TO WARN

Crowston asserts that the district court erred in granting summary judgment dismissal of his claim that the defendants negligently failed to provide appropriate post-sale warnings about the dangers of mismatching 16 inch tires and 16.5 inch wheels. Crowston alleged that, after the defendants manufactured and sold the component parts of this tire/wheel assembly, they learned that users were mismatching the parts, thereby creating a dangerous situation which could result in explosions during inflation of the tire. He argues that the defendants had a post-sale duty to warn the public and the individual purchasers of this tire and this wheel about the dangers of mismatching. He contends that summary judgment was inappropriate because there are genuine issues of material fact about whether the defendants performed their post-sale duty in a reasonable manner. The defendants respond that they did not have a post-sale duty to warn because, under North Dakota law, products liability is determined by the condition of the product at the time it is sold. Alternatively they assert that, assuming a post-sale duty to warn may exist in some circumstances, it does not apply to these products.

■ Summary judgment is appropriate if there is no genuine dispute as to either the

material facts or the inferences to be drawn from undisputed facts, or if only a question of law is involved. *Stewart v. Ryan,* 520 N.W.2d 39 (N.D.1994). Although negligence actions are ordinarily inappropriate for summary judgment, *Stokka v. Cass County Elec. Coop.,* 373 N.W.2d 911 (N.D.1985), one of the elements of the tort of negligence is the existence of a duty on the part of the alleged tortfeasor, and whether a duty exists is generally a preliminary question of law for the court. *Ebach v. Ralston,* 469 N.W.2d 801 (N.D.1991).

■ Under North Dakota law, negligence and strict liability in tort are separate and distinct theories of products liability, each with a different focus. *E.g., Oanes v. Westgo, Inc.,* 476 N.W.2d 248 (N.D.1991); *Butz v. Werner,* 438 N.W.2d 509 (N.D.1989). Strict liability in tort focuses on whether or not the product is defective and unreasonably dangerous, while negligence focuses on whether or not the manufacturer's conduct falls below the standard of reasonable care. *Butz, supra; Mauch v. Manufacturers Sales & Service, Inc.,* 345 N.W.2d 338 (N.D.1984). Under both theories, liability may be imposed because of inadequate warnings. *Butz, supra;* see *Morrison v. Grand Forks Housing Authority,* 436 N.W.2d 221 (N.D. 1989); *Andersen v. Teamsters Local 116 Bldg. Club,* 347 N.W.2d 309 (N.D.1984).

■ When Crowston was injured, N.D.C.C. § 28–01.1–05(1)[2] provided:

"No product may be considered to have a defect or to be in a defective condition, *unless at the time the product was sold by the manufacturer or other initial seller,* there was a defect or defective condition in the product which made the product unreasonably dangerous to the user or consumer." [Emphasis added].

Under that statute, whether a product is defective is determined by its condition at the time it was sold by the manufacturer or other initial seller. However, N.D.C.C. § 28–01.1–02(3) also provided:

---

**2.** Ch. 28–01.1, N.D.C.C., was repealed by 1993 N.D.Laws, Ch. 324, § 5. Our current products liability law is found in N.D.C.C. Ch. 28–01.3.

See 1993 N.D.Laws, Ch. 324. The language of former N.D.C.C. § 28–01.1–05(1) is now found in N.D.C.C. § 28–01.3–06.

"If a manufacturer, wholesaler, or retailer issues a recall of a product in any state, modifies a product, *or becomes aware of any defect in a product at any time, and fails to notify or warn a user of the product who is subsequently injured or damaged as a result of the defect,* the provisions of subsection 1 do not bar any action against the manufacturer, wholesaler, or retailer based upon, or arising out of, the defect." [Emphasis added].

Although that language dealt with the statute of limitations for products liability actions, it necessarily recognized a duty to warn "at any time" a manufacturer became aware of any defect in a product and did not exclude a duty to warn about potential dangers that manufacturers became aware of after the product was sold.

In *Witthauer v. Burkhart Roentgen, Inc.,* 467 N.W.2d 439 (N.D.1991), we considered an analogous issue about the scope of the products liability act in the context of a negligent failure to warn claim and whether a subsequent alteration or modification of a product by someone other than the manufacturer provided an absolute defense for the manufacturer under N.D.C.C. § 28–01.1–04, which specifies that alteration or modification of the product is a defense. See also *Oanes v. Westgo, Inc.,* 476 N.W.2d 248 (N.D.1991). We held that a subsequent alteration was not an absolute defense to that claim:

> "[The manufacturer's] liability was premised on its negligent failure to warn that the lower housing of the lamp contained a heat-protection filter, and that without the filter in place, the temperature at the focus of the lamp would reach harmful levels. Under [the manufacturer's] interpretation, because of Fargo Clinic's use of the lamp without the lower housing, the statute would shield it from any liability whatsoever for negligently failing to warn of the dangers resulting from a foreseeable alteration or modification of the lamp. We will not assume that the Legislature intended a result so unjust and a result which appears contrary to prevailing doctrine.... We conclude that § 28–01.1–04 does not preclude a seller's liability when it is premised on the negligent failure to provide ade-

quate warnings of the dangerous consequences resulting from a foreseeable alteration or modification of a product."
*Witthauer, supra,* 467 N.W.2d at 445 (citations and footnote omitted).

Interpreting our products liability law to allow manufacturers to ignore post-sale knowledge about dangers associated with their product is not only contrary to prevailing principles of negligence law, see Restatement (Second) of Torts § 388 (1965), here the Legislature specified in N.D.C.C. § 28–01.1–02(3) that a cause of action is not time barred if the manufacturer becomes aware of a defect "at any time, and fails to notify or warn a user" who is subsequently injured by the defect. It follows we must assume the Legislature intended a post-sale duty to warn under negligence principles if, subsequent to the sale of a product, manufacturers become aware of dangerous conditions associated with the use of the product. If it did not intend a cause of action for failure to warn after the sale of the product, removal of the time bar to the action for this failure to warn would be, at best, illogical, if not ludicrous.

Other courts have generally held that manufacturers have a duty to warn of dangers involved in the use of their products if they become aware of those dangers after the product has been sold. *Braniff Airways, Inc. v. Curtiss–Wright Corp.,* 411 F.2d 451 (2d Cir.), *cert. denied,* 396 U.S. 959, 90 S.Ct. 431, 24 L.Ed.2d 423 (1969); *Downing v. Overhead Door Corp.,* 707 P.2d 1027 (Colo. App.1985); *Patton v. Hutchinson Wil–Rich Mfg. Co.,* 253 Kan. 741, 861 P.2d 1299 (1993); *Owens–Illinois, Inc. v. Zenobia,* 325 Md. 420, 601 A.2d 633 (1992); *Comstock v. General Motors Corp.,* 358 Mich. 163, 99 N.W.2d 627 (1959); *Hodder v. Goodyear Tire & Rubber Co.,* 426 N.W.2d 826 (Minn.1988), *cert. denied,* 492 U.S. 926, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989); *Cover v. Cohen,* 61 N.Y.2d 261, 473 N.Y.S.2d 378, 461 N.E.2d 864 (1984); *Kozlowski v. John E. Smith's Sons Co.,* 87 Wis.2d 882, 275 N.W.2d 915 (1979). See 3 *American Law of Products Liability 3d,* § 32:79 et seq. (1993); 1A Frumer and Friedman, *Products Liability,* § 2.26[8] (1994); Schwartz, *The Post–Sale Duty to Warn: Two Unfortunate Forks in*

*the Road to a Reasonable Doctrine*, 58 N.Y.U.L.Rev. 892 (1983); Allee, *Post–Sale Obligations of Product Manufacturers*, 12 Fordham Urb.L.J. 625 (1984); Royal, *Post Sale Warnings: A Review and Analysis Seeking Fair Compensation Under Uniform Law*, 33 Drake L.Rev. 817 (1983).

Some courts have restricted a post-sale duty to warn to products sold in a limited market to a specialized group of consumers. *Habecker v. Clark Equipment Co.*, 797 F.Supp. 381 (M.D.Pa.1992) [no duty to warn of post-sale improvements to forklift]; *Kozlowski, supra* [duty to warn of post-sale improvement to industrial sausage stuffer]; *Walton v. Avco Corp.*, 383 Pa.Super. 518, 557 A.2d 372 (1989), *aff'd in part, rev'd in part, Walton v. Avco Corp.*, 530 Pa. 568, 610 A.2d 454 (1992) [duty to warn of post-sale improvements to helicopter]; *Bottignoli v. Ariens Co.*, 234 N.J.Super. 353, 560 A.2d 1261 (1989) [no post-sale duty to warn of updated standards for snowblower]. In those cases, manufacturers can trace ownership of the product so that warnings can be given to specific parties without imposing an unreasonable burden on the manufacturers. *E.g., Kozlowski, supra.* See *Patton, supra.*

■ In this case, the 16 inch tire and the 16.5 inch wheel were mass produced and widely distributed in the marketplace. These products are not unique or sold to a specialized group of consumers in a limited market. *Compare Kozlowski, supra.* It would be an unreasonable burden on manufacturers to impose a duty on them to trace the purchasers or the current owners of these types of products. Under these circumstances we hold that the defendants did not have a post-sale duty to trace the individual purchasers or current owners of these products and warn them about the dangers of mismatching 16 inch tires and 16.5 inch wheels.

■ Nevertheless, under negligence principles, a manufacturer cannot totally ignore post-sale knowledge about the dangers associated with the use of its product when the specific purchasers or current owners cannot be reasonably traced. *Patton, supra; Cover, supra; Hodder, supra;* see 3 *American Law of Products Liability, supra.* Simply because a product is mass produced and widely distributed does not totally absolve a manufacturer of a post-sale duty to warn under ordinary negligence principles. See *Downing, supra* (garage door); *Zenobia, supra* (asbestos); *Hodder, supra* (multi-piece rim).

In *Hodder,* the plaintiff was injured in 1981 when a multi-piece "K" rim manufactured by Goodyear in 1955 separated during inflation. Goodyear became aware of safety hazards associated with the use of the multipiece "K" rim after the rim was manufactured and before the plaintiff's injury. A jury found that the rim was not defectively manufactured, but that Goodyear had breached a post-sale duty to warn. The Minnesota Supreme Court concluded that, under the circumstances of that case, Goodyear had a post-sale duty to warn:

"Hundreds of thousands of K-rims have been used in millions of tire changes over the years without incident; of the 134 or so K-rim explosions which did occur, many are explained by improper servicing or misuse. Goodyear steadfastly maintains its K-rim is a safe product if used properly. Nevertheless, it became evident by the late 1950's that K-rims could be temperamental; that the margin for error in servicing the K-rim assembly was dangerously small and it might explosively separate with seemingly little provocation; that when explosions did occur, serious injury or death usually resulted; and, therefore, that great care was required in the handling and servicing of K-rims. Further, Goodyear has continued over the years in the tire rim business, and, although all K-rim production was discontinued by 1969, Goodyear continued to advertise its K-rims as late as 1977, and has continued to sell tires and tubes for use with used K-rims. Finally, Goodyear undertook a duty to warn of K-rim dangers. Under these circumstances, it seems to us that Goodyear had a continuing duty to instruct and to warn, so that users of used K-rims would be apprised of safety hazards which, at an earlier time, were not fully appreciated. A continuing duty to warn arises only in special cases. We think this is such a case."

*Hodder, supra,* 426 N.W.2d at 833. The court affirmed the jury's finding that Goodyear breached its post-sale duty to warn, holding that the evidence was such that the jury could have found that post-sale warnings given by Goodyear in that case were inadequate to reach K-rim users.

Although the defendants argue that *Hodder* is distinguishable, we believe the significant "special" circumstances present in that case are also present in this case. In both cases, serious injury was a consequence of the dangers associated with the use of the product. The defendants became aware of those dangers after the manufacture and sale of the product, and those dangers may have been eliminated by appropriate post-sale warnings. The number of individuals exposed to the potential dangers in both cases was significant. Although the number of this type of products produced militates against individualized notice to the original purchasers, that same factor suggests that manufacturers cannot totally ignore post-sale information which has the potential to prevent serious injury to so many people.

 We hold that, under negligence failure to warn principles, the defendants had a post-sale duty to warn about dangers associated with the use of their products. In those situations, manufacturers can satisfy that duty by taking reasonable steps to warn foreseeable users about the dangers associated with their product. *Patton, supra; Cover, supra;* see 3 *American Law of Products Liability, supra;* Schwartz, *supra;* Royal, *supra;* Allee, *supra.*

The reasonableness of the post-sale warnings depend on the facts of each particular case. As the Kansas Supreme Court explained in *Patton, supra,* 861 P.2d at 1314–15:

"The nature of the post-sale warning and where and to whom it should be given will involve a case-by-case analysis. The analysis shall include but not be limited to the examination of such factors as: (1) the nature of the harm that may result from use without notice, (2) the likelihood that harm will occur (Does future continuing use of the product create a significant risk of serious harm which can be lessened if a post-sale warning is given?), (3) how many persons are affected, (4) the economic burden on the manufacturer of identifying and contacting current product users (Does the manufacturer have an ongoing relationship with the purchaser or other knowledge of the identity of the owner of the product which provides a practical way of providing a post-sale warning?), (5) the nature of the industry, (6) the type of product involved, (7) the number of units manufactured or sold, and (8) steps taken other than giving of notice to correct the problem. See *Cover,* 61 N.Y.2d at 276–77, 473 N.Y.S.2d 378, 461 N.E.2d 864. The facts may indicate that notice to all ultimate consumers who purchased the product prior to the time the manufacturer learned of a potential danger is unreasonable, if not impossible. Notice to the distributor or retail seller may, in certain contexts, meet the reasonableness standard.

"The particular facts may reflect that a lack of notice was not unreasonable and that a reasonable manufacturer under the circumstances would have taken no post-sale action. Knowledge and reasonableness, as determinative factors, will provide an incentive to manufacturers to issue warnings if latent product hazards are discovered after the initial sale and a warning under the circumstances would be reasonable. . . .

"Generally, resolution of the issue of reasonableness, after an initial court determination that the issue is presented, will be one of fact for the jury. The trial judge, in instructing the jury on a post-sale duty to warn, shall utilize the relevant factors referenced herein, including the nature and likelihood of the injury posed by the product, the feasibility and expense of issuing a warning, whether the warning would be effective, and whether ultimate consumers who purchased the product can be identified."

 Accepting, as we must for purposes of summary judgment, that these defendants became aware of the dangers of mismatching after their respective manufacture and sale of the parts of the tire/wheel assembly, we cannot say, as a matter of law,

that their post-sale warnings of the dangers of mismatching in this case met the reasonableness standard. Rather, the issue of the reasonableness of their warnings is a fact question which is inappropriate for summary judgment. *Patton, supra; Cover, supra; Hodder, supra.* We therefore conclude the district court erred in granting summary judgment on Crowston's claim that the defendants negligently breached their post-sale duty to warn. We reverse the summary judgment and remand for further proceedings on that claim.[3] However, our decision does not necessarily require a retrial on Crowston's other claims. Instead, we separately analyze the issues involved with those claims to determine whether or not reversible error occurred.

### III

### ADMISSION OF EVIDENCE

Crowston raises several issues pertaining to the admission of evidence at the trial of his other claims. Before identifying those specific issues, we generally summarize our review of issues involving the admission of evidence:

> "Relevant evidence means evidence that would reasonably and actually tend to prove or disprove any fact that is of consequence to the determination of an action.... Relevant evidence is generally admissible.... A trial court has discretion to determine whether evidence is relevant, and its decision will not be reversed on appeal absent an abuse of discretion.... Relevant evidence 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.' ... A trial court has discretion to balance the proba-

tive value of the proffered evidence against the dangers enumerated in Rule 403, N.D.R.Ev., and we also review that determination under the abuse-of-discretion standard." *Williston Farm Equipment v. Steiger Tractor,* 504 N.W.2d 545, 548–49 (N.D.1993) (citations omitted).

### A.

### *Butz* Presumption

In *Butz v. Werner,* 438 N.W.2d 509, 517 (N.D.1989), this court held that "when no warning is given the plaintiff is entitled to the benefit of a presumption that an adequate warning, if given, would have been read and heeded." See Restatement (Second) of Torts 402A, Comment j (1965). The *Butz* presumption applies only to strict liability failure to warn claims, not to negligent failure to warn claims. *Jacobs v. Anderson Bldg. Co.,* 459 N.W.2d 384 (N.D. 1990). "A party against whom a presumption is directed has the burden of proving that the nonexistence of the presumed fact is more probable than its existence." N.D.R.Evid. 301. See *Butz, supra.* Absent the introduction of evidence to rebut the *Butz* presumption, the proximate cause element of a strict liability failure to warn claim is presumptively established. *Butz, supra.*

In this case, Dr. Richard Harper, a psychiatrist, reviewed Crowston's medical and social records and testified at trial that Crowston had an anti-social personality disorder which made it highly unlikely he would have read or followed any additional warnings on the tire or the wheel. Harper testified that Crowston's anti-social personality disorder would cause him to act on his own internal impulses, have poor judgment, act impulsively, and do the opposite of directions or warnings.

> The issue of proximate cause is a question of fact. *Butz v. Werner,* 438 N.W.2d 509 (N.D. 1989). Although there was evidence that Crowston ignored warnings on the tire changing machine, we will not assume or hold as a matter of law, that he would have also ignored a warning about the dangers of mismatching.

---

**3.** The defendants also argue that Crowston presented no evidence by affidavit or otherwise to establish what they could have done after the manufacture of their component parts which would have had any bearing, from a causation standpoint, on the accident. However, the defendants' motion for summary judgment was premised on the lack of a duty and not on proximate cause.

Crowston argues that Dr. Harper's testimony was inadmissible to show his character for the purpose of proving he acted in conformity therewith. The defendants respond that Dr. Harper's testimony was relevant and necessary to rebut the *Butz* presumption.

In *Technical Chemical Co. v. Jacobs*, 480 S.W.2d 602, 606 (Tex.1972), the Texas Supreme Court described evidence that could be used to rebut the presumption that a warning would have been read:

> "Depending upon the individual facts, this may be accomplished by the manufacturer's producing evidence that the user was blind, illiterate, intoxicated at the time of the use, irresponsible or lax in judgment or by some other circumstance tending to show that the improper use was or would have been made regardless of the warning."

See also *Nissen Trampoline Co. v. Terre Haute First National Bank*, 332 N.E.2d 820 (Ind.Ct.App.1975), *rev'd on procedural grounds*, 265 Ind. 457, 358 N.E.2d 974 (1976).

N.D.R.Evid. 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith, but may be admissible for other purposes including proof of motive, opportunity, intent, knowledge, identity, or absence of mistake. Under N.D.R.Evid. 404(b), the proponent of evidence of other crimes, wrongs, or acts must also demonstrate the relevance and probative value of the evidence, and its probative value must be balanced against its prejudicial effect under N.D.R.Evid. 403. *Dahlen v. Landis*, 314 N.W.2d 63 (N.D.1981). Under N.D.R.Evid. 403, the trial court has discretion to admit or exclude evidence after balancing its probative value against the dangers of unfair prejudice enumerated in the rule, and a trial court's decision will not be disturbed on appeal absent an abuse of discretion. *Williston Farm Equipment, supra*.

Dr. Harper's testimony was offered for the purpose of rebutting the *Butz* presumption. His testimony was probative of the issue of whether Crowston would have read or heeded any warnings that might have been on the tire or the wheel and was relevant and necessary to rebut the *Butz* presumption. *Technical Chemical, supra; Nissen Trampoline, supra*. The trial court carefully limited the evidence to Crowston's personality disorder and excluded other character evidence after concluding that its probative value was substantially outweighed by its prejudicial effect. The trial court did not abuse its discretion in admitting Dr. Harper's testimony.

### B.

### Similar Accidents

The trial court granted the defendants' pre-trial motion in limine to exclude "evidence of alleged similar mismatch explosions or accidents which occurred after the sale or manufacture of the Goodyear tire in August of 1977." Crowston argues the court erred in refusing to admit four exhibits which he asserts depicted substantially similar mismatch accidents. He argues the evidence was directly relevant to the issues of accident causation, product defect, and the unreasonably dangerous condition of the products due to the absence of warnings.

However, the record on appeal does not clearly indicate an offer of proof to establish the substantial similarity of those accidents. The parties stipulated that certain exhibits were excluded by the court's pretrial order; however, they did not stipulate that an offer of proof was not necessary to establish the substantial similarity of the accidents. The exclusion of evidence by a motion in limine does not dispense with the requirement of an offer of proof so the trial court can consider the proffered evidence in the context of other evidence presented during trial. *Williston Farm Equipment, supra; Twyford v. Weber*, 220 N.W.2d 919 (Iowa 1974).

Evidence of other accidents is not admissible unless the proponent demonstrates that the circumstances of the accidents are substantially similar to the circumstances of the accident in the pending lawsuit. *Ebach v. Ralston*, 510 N.W.2d 604 (N.D.1994); *South v. National R.R. Passen-*

*ger Corp.,* 290 N.W.2d 819 (N.D.1980). A trial court's determination on the admissibility of alleged substantially similar accidents is governed by N.D.R.Evid. 403, and we review the trial court's determination under the abuse-of-discretion standard. *Ebach, supra; South, supra.*

On their face, these four exhibits lacked adequate specificity for the trial court to determine whether the accidents were substantially similar to this accident. On this record, we cannot conclude the trial court abused its discretion in excluding those exhibits. Our decision does not preclude reconsideration of that issue if it arises in the trial of Crowston's post-sale duty to warn claim.

### C.

### Pre- and Post–Manufacture Exhibits

Crowston argues that the trial court erred in refusing to admit several pre-manufacture and post-manufacture exhibits. He also asserts that the trial court erred in excluding five shop manuals for truck and tire care.

The trial court concluded that the five shop manuals were not relevant. After reviewing those exhibits, we do not conclude the trial court abused its discretion in refusing to admit those exhibits. We have also reviewed the other exhibits, and, on this record, we do not conclude the trial court abused its discretion in excluding them. Again, our decision does not preclude reconsideration of the admissibility of those exhibits if that issue arises in the trial of Crowston's post-sale duty to warn claim.

### D.

### Deposition Testimony

Crowston asserts that the trial court erred in excluding deposition testimony by representatives of Kelsey–Hayes in another lawsuit against Kelsey–Hayes. Crowston argues the deposition testimony from another action involving a mismatch explosion is within the "former testimony" exception of the hearsay rule.

N.D.R.Evid. 804(b)(1) provides:

*"(b) Hearsay Exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

*"(1) Former Testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

N.D.R.Evid. 804(a)(5) defines "unavailability as a witness" to include situations in which the defendant:

"(5) is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance ... by process or other reasonable means."

The trial court concluded that the deponents were not unavailable within the meaning of N.D.R.Evid. 804(a)(5). We agree. Crowston made no effort to show that he had unsuccessfully attempted to procure the presence of the deponents at trial, to establish that the deponents were unwilling to come to North Dakota to testify, or to take their depositions for this action. More than merely showing the witnesses were not residents of North Dakota is required to show Crowston was unable to procure their attendance "by process or other reasonable means." *Janich Bros., Inc. v. American Distilling Co.,* 570 F.2d 848 (9th Cir.1977), *cert. denied,* 439 U.S. 829, 99 S.Ct. 103, 58 L.Ed.2d 122 (1978); see *Williams v. Collins Communications, Inc.,* 720 P.2d 880 (Wyo. 1986). See generally, 11 Moore's Federal Practice, ¶ 804.03[5] (1994); 4 Louisell & Mueller, Federal Evidence § 486 (1980). *Compare DeLuryea v. Winthrop Laboratories,* 697 F.2d 222 (8th Cir.1983) [deposition of deceased psychiatrist in prior workers compensation proceeding admissible]. The

opposite conclusion would make certain depositions "boilerplate evidence" in these actions. The trial court did not abuse its discretion in refusing to admit the deposition testimony from another action.[4]

## IV

## JURY INSTRUCTIONS

Crowston argues that the following jury instruction ensured a defense verdict in his strict liability in tort claim because it placed a greater burden on him than required by law:

*"MANUFACTURERS NOT INSURERS OR GUARANTORS*

"The manufacturers and sellers of products are not insurers of the safety of persons who use the products. The manufacturers and sellers are under no duty to make an accident-proof or fool-proof product. The law does not require the manufacturers and sellers of products to guarantee that their products cannot be used in such a way as to cause an injury.

"Neither does the law require that the manufacturers and sellers of products to adopt every possible new device which might possibly be conceived or invented. Manufacturers and sellers of products are under no duty to use a particular design or method in the manufacture, packaging, labeling, and/or sale of their products. So long as the product, as designed, manufactured, packaged and labeled is reasonably safe for its intended use, the manufacturers and sellers have done all that the law requires, even though other possible designs might be conceived which would be safer."

It is well established that jury instructions must fairly inform the jury of the applicable law. *Spieker v. Westgo, Inc.,* 479 N.W.2d 837 (N.D.1992); *Oanes v. Westgo, Inc.,* 476 N.W.2d 248 (N.D.1991). On appeal, we review jury instructions as a whole and if they correctly advise the jury of the law, they are sufficient although parts of the instructions, standing alone, may be erroneous and insufficient. *Id.*

In *Spieker,* we said that a similar instruction was more argumentative than instructive. However, we held that it did not require reversal because, when balanced with other instructions on the duties and responsibilities of a manufacturer, the instructions did not give undue influence to obligations not imposed by law.

In this case, the jury was also instructed that a manufacturer has a duty to provide reasonable warnings for uses or misuses that the manufacturer could reasonably foresee. See *Johnson v. American Motors Corp.,* 225 N.W.2d 57 (N.D.1974). Although we caution against the continued use of the quoted instruction, as they pertained to the issues decided by the jury, the court's instructions on a manufacturer's duty to warn and on foreseeable misuse of a product, as a whole, fairly and adequately explained the law to the jury.

We reverse the summary judgment dismissal of Crowston's post-sale duty to warn

---

**4.** In support of his argument that the trial court erred in excluding the deposition testimony, Crowston also relied upon N.D.R.Civ.P. 32(a)(3), which allows a deposition of a witness to be used at trial "so far as admissible under the rules of evidence applied as though the witnesses were then present and testifying," *if the witness is* more than one hundred miles from the place of trial or is out of state, unless the party offering the deposition has procured the absence of the witness. See Notes of Advisory Committee on Rules for F.R.Civ.P. 32(a)(3), 1970 Amendment.

Arguably, both N.D.R.Evid. 804(b)(1) and N.D.R.Civ.P. 32(a)(3) govern the trial use of de-

positions taken in other actions and impose different requirements for their admissibility. However, N.D.R.Civ.P. 32(a)(4) refers to depositions taken in other actions and provides that "[a] deposition previously taken may also be used as permitted by the North Dakota Rules of Evidence." To the extent there is a conflict in the admissibility of depositions from other actions under the rules of evidence and the rules of civil procedure, the admissibility of depositions from other actions is governed by the rules of evidence. 4 Louisell & Mueller, Federal Evidence § 487, p. 1081 (1980); N.D.R.Civ.P. 32(a)(4).

claim and remand for further proceedings on it. However, we affirm the dismissal of Crowston's other claims.

SANDSTROM, NEUMANN and MESCHKE, JJ., and VERNON R. PEDERSON, Surrogate Judge, concur.

VERNON R. PEDERSON, Surrogate Judge, sitting in place of LEVINE, J., disqualified.